**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JENNIFER JOHNSON ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:23-cv-02944 |
| ) | |
| ACB IDEAS, LLC ) | |
| ) | |
| *Defendant.* ) | |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY**

Defendant ACB Ideas, LLC, by counsel, hereby moves to compel arbitration of the Complaint filed by Plaintiff Jennifer Phillips Johnson ("Plaintiff" or "Ms. Johnson") and to stay this action pending the outcome of arbitration.

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff filed this suit in her individual capacity in a thinly veiled attempt to circumvent the binding arbitration provision in an Independent Contract Agreement between her entity, Red Light Public Relations ("Red Light"), and the Defendant, ACB Ideas, LLC ("ACB"). This case arises out of a purported "employment" dispute between Plaintiff and ACB. ACB is an entity founded by Arthur Brooks, a happiness expert who has written two New York Times #1 Bestsellers. *See* Compl. ¶ 1. Plaintiff is the founder and CEO of Red Light. *Id.* ¶ 20. Upon information and belief, Red Light was a fictitious name for Phillips Public Relations, Inc., a company Plaintiff incorporated in California in 2006 under her maiden name, Jennifer Anne Phillips. *See* **Exhibit A**, Screenshot from California Secretary of State website (last visited Oct. 10, 2023); **Exhibit B**, LexisNexis Business Registration Records. Plaintiff was the Chief Executive Officer, Secretary, Chief Financial Officer, and only Director of Phillips Public Relations, Inc., as well as the registered agent for Phillips Public Relations, Inc. *See* **Exhibit C**,

Jan. 3, 2020 Statement of Information. Plaintiff dissolved Phillips Public Relations, Inc. on May 1, 2023, resulting in the termination of its incorporated status. *See* **Exhibit D**, Certificate of Dissolution. Red Light's fictitious name status expired in 2011. *See* Exhibit B.

Red Light provided services to ACB pursuant to an Independent Contractor Agreement entered into on June 28, 2022 and made effective August 1, 2022. Compl. ¶ 20; **Exhibit E**, Independent Contractor Agreement § 8. The Independent Contractor Agreement provides that the relationship with ACB "is that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to, create a partnership, agency, joint venture, or employment relationship between ACB Ideas and any of [Red Light's] employees or agents." Exhibit E § 9. The Independent Contractor Agreement requires arbitration of "[a]ny controversy, claim or dispute arising out of, in connection with or by reason of this Operating Agreement [sic][1] shall be resolved by confidential binding arbitration before Judicial Arbitration and Mediation Service ("JAMS") pursuant to the Federal Arbitration Act (9 U.S.C. § 1, et seq.)." *Id.* §11(a). Plaintiff executed the Independent Contractor Agreement on behalf of Red Light. *See id.* at 8.

Despite the existence of an express Independent Contractor Agreement between ACB and Plaintiff's entity, Red Light, Plaintiff alleges that she was also an employee of ACB for two months, from October 2022 to December 2022. *See generally* Compl. According to the Complaint, ACB orally offered Plaintiff the position of Chief of Staff for ACB and orally promised her a "generous compensation package" of "at least $210,000 each year." Compl. ¶¶ 26-27. The Complaint does not allege that any of these alleged promises were ever reduced to writing. *See generally id.*; *id.* ¶ 47 (alleging that Plaintiff complained about "the fact that her employment contract had yet to be finalized."). According to Plaintiff, in the two months she worked for ACB,

---

[1] The reference to "Operating Agreement" in the Independent Contractor Agreement is a scrivener's error.

2

she "fix[ed] the company's financials, operations, and policies" and "[t]he company's financial and operational performance improved dramatically as a result." *Id.* ¶ 5.

On September 11, 2023, the day before Mr. Brooks' latest book debuted, Plaintiff filed her Complaint against ACB in the Superior Court for the District of Columbia ("D.C. Superior Court"). The Complaint includes claims for failure to pay wages and provide sick leave under D.C. law, breach of an alleged oral employment agreement, breach of the covenant of good faith of fair dealing, failure to negotiate open contract terms in good faith, wrongful constructive discharge, retaliation in violation of D.C. law, intentional infliction of emotional distress, and quantum meruit, all stemming from her alleged "employment" with ACB. *See generally* Compl. However, the Complaint is littered with references to Red Light, and ties Plaintiff's alleged "work" for ACB and her claims for damages back to Red Light. *See, e.g.*, Compl ¶¶ 1 (alleging that her "strategic thinking and leadership at Red Light" is partly to credit for the success of Mr. Brooks' latest book), 11, 48 (alleging that ACB retaliated against Plaintiff by firing "her company," Red Light), 34, 47, (alleging that Red Light turned down opportunities so that Plaintiff could do work for ACB); 47, 124 (alleging that Plaintiff "reoriented" and "retool[ed]" Red Light to focus on ACB); 125 (alleging that "decreased revenues and increased expenses at Red Light PR put great financial and emotional stress" on Plaintiff). On October 3, 2023, ACB removed the action from the D.C. Superior Court to this Court. For the reasons set forth herein, this Court should compel arbitration and stay this action pending an arbitration award.

II.     **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation

3

of any contract." 9 U.S.C. § 2. "The FAA creates a strong presumption favoring the enforcement of arbitration agreements, and doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration." *Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 40 (D.D.C. 2008) (Lamberth, J.) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987) (arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Thus, "[a]rbitration should be ordered unless it can be said with certainty that the arbitration provision cannot be interpreted to cover the dispute." Martin, 567 F. Supp. 2d at 40 citing *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

Section 4 of the FAA permits a party to petition any United States district court which would otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "A district court must grant a Motion to Compel Arbitration when (1) it finds that the arbitration agreement is valid and enforceable and (2) where the claims raised in the complaint fall within the scope of the arbitration agreement." *Steele v. Fannie Mae*, No. CIV. 13-01089 RCL, 2013 WL 5205898, at *1 (D.D.C. Sept. 13, 2013) (Lamberth, J.).

When considering a motion to compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c). *See Martin*, 567 F. Supp. 2d at 40-41 (citing *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003); *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008). Thus, the Court may consider evidence outside the pleadings in evaluating a motion to compel arbitration. *See Brown, LLP.*, 267 F. Supp. 2d at 68. The party seeking to compel arbitration bears the initial responsibility of presenting evidence sufficient to

4

demonstrate an enforceable agreement to arbitration. *See Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 136 (D.D.C. 2015). "Once the existence of a valid arbitration agreement has been established", the non-moving party "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 9 (D.D.C. 2021) "The non-moving party, however, must establish more than the 'mere existence of a scintilla of evidence' in support of its position." *Booker v. Robert Half Intern., Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004), *aff'd*, 413 F.3d 77 (D.C. Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "'If the evidence is merely colorable, or is not significantly probative,'" the court may compel arbitration. *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (noting that once parties reach a bargain to arbitrate, a party seeking to avoid pre-litigation arbitration bears the substantial burden of showing that Congress never intended its policy of favoring arbitration to apply in such circumstances).

### III.   ARGUMENT

#### A. The Independent Contractor Agreement is Binding and Enforceable.

Under District of Columbia law, "a signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." *Emeronye v. CACI Int'l, Inc.*, 141 F. Supp. 2d 82, 86 (D.D.C. 2001) (citing *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995) ( "Mutual assent to a contract, often referred to as a 'meeting of the minds,' is most clearly evidenced by the terms of a signed written agreement.")). Here, the Independent Contractor Agreement containing the arbitration provision clearly bears Ms. Johnson's signature on behalf of her company, Red Light, *see* Exhibit E at 8, and there are no special circumstances that would relieve the parties of the obligation to arbitrate. Thus, Red Light is bound by the Independent Contractor Agreement, but so is Plaintiff because she was

a director, officer, employee, and agent of Red Light. *See* Exhibits A, B. This is especially true since Red Light was defunct at the time of the Independent Contractor Agreement, meaning Plaintiff *is* Red Light and Red Light *is* Plaintiff. In short, this is not an employment dispute; rather, it is a dispute over the scope of the Independent Contractor Agreement with the key question being whether Plaintiff's alleged work for ACB falls within the scope of the binding and enforceable arbitration provision in the Independent Contractor Agreement. As explained further *infra*, this is a factual question that must be resolved by an arbitrator.

### B. Plaintiff's Claims Fall Within the Scope of the Arbitration Provision.

It is well-settled that where a contract contains an arbitration clause, there is a presumption of arbitrability and any doubts concerning the scope of an arbitrable issue should be resolved in favor of arbitration. *See AT&T Tech., Inc.*, 475 U.S. at 650; *Washington Mailers Union No. 29 v. Washington Post Co.*, 233 F.3d 587, 589 (D.C. Cir. 2000) (if a contract includes an arbitration clause, a presumption of arbitrability arises); *Taylor v. Fannie Mae*, 839 F. Supp. 2d 259, 260 (D.D.C. 2012) (Lamberth, J.) (similar). However, where, as here, the arbitration clause is broad, the presumption in favor of arbitrability heightens such that "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech.*, 475 U.S. at 654 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)). The arbitration provision encompasses "[a]ny controversy, claim or dispute arising out of, in connection with or by reason of" the Independent Contractor Agreement. Exhibit D, Independent Contractor Agreement § 11(a). The phrase "arising out of" requires the Court to interpret the arbitration provision in the Independent Contractor Agreement broadly, to cover "all claims that are germane to the subject matter" of the Independent Contractor Agreement. *Invista*

6

*N.A., S.A.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 206 (D.D.C. 2007) (Lamberth, J.) (citing *Dowley v. Dewey Ballantine LLP.*, No. 05–662 (EGS), 2006 WL 1102768 at *8 (D.D.C. April 26, 2006) (holding that "arising out of" "reaches all disputes having their origin in the contract, whether or not they implicate interpretation or performance of the contract per se."); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (holding that a clause requiring the arbitration of "[a]ny dispute, controversy or claim arising under or in connection with" an employment agreement was "prototypical[ly] broad" and "justifies a presumption of arbitrability").

Importantly, to determine whether Plaintiff's claims are within the scope of the broad arbitration provision in the Independent Contractor Agreement, the Court "must focus on the factual allegations in the complaint instead of the legal causes of action." *Invista N.A., S.A.R.L.*, 503 F. Supp. 2d at 206 (citing *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 147 (D.D.C. 2004)). Therefore, if Plaintiff's "factual allegations touch matters covered within the arbitration agreement, the dispute must be submitted to arbitration because the dispute is within the scope of the arbitration agreement." *Id.*

While Plaintiff attempts to cast her legal claims as separate from the Independent Contractor Agreement, the factual allegations in the Complaint plainly "touch matters" covered by the Independent Contractor Agreement between Red Light and ACB. The Independent Contractor Agreement set the terms by which Red Light and its principal, Ms. Johnson, would conduct work for ACB. To the extent Ms. Johnson believes that she was asked to do work beyond the scope of her Independent Contractor Agreement, such beliefs are merely a dispute as to the scope of the Independent Contractor Agreement, not separate claims. Indeed, most, if not all, of Plaintiff's claims ultimately will be decided based on whether her work was covered by the

7

Agreement or not, since, as an independent contractor, none of the employment related claims are valid.

Moreover, Plaintiff alleges that her "strategic thinking and leadership ***at Red Light***" is partly to credit for the success of Mr. Brooks' latest book and that ACB asked her to help fix systemic problems that could hamper ACB's expansion "as a result of Red Light PR's successful public relations campaigns." Compl ¶¶ 1 (emphasis added), 23. She also alleges that she "reoriented" and "retool[ed]" Red Light to focus on ACB. Compl ¶¶ 47, 124. In other words, the Independent Contractor Agreement between Red Light and ACB was the basis of Plaintiff's relationship with ACB and Plaintiff's work for ACB. *See Wolff v. Westwood Mgt., LLC*, 503 F. Supp. 2d 274, 282 (D.D.C. 2007), *aff'd*, 558 F.3d 517 (D.C. Cir. 2009). For this reason alone, Plaintiff's claims should be arbitrated under the broad arbitration provision in the Independent Contractor Agreement. But Plaintiff goes further – Plaintiff ties not only her alleged "work" for ACB back to Red Light, she also ties her claims for damages back to Red Light. For example, she alleges that ACB damaged her when it "retaliated" against her by firing "her company" Red Light. Compl ¶¶ 11, 48. She also alleges that Red Light experienced an increase in expenses and a decrease in revenue as the result of ACB's alleged misconduct, and that this "put great financial and emotional stress" on Plaintiff, forming the basis for her intentional infliction of emotional distress claims. *Id.* ¶ 125. Plaintiff's own allegations demonstrate that her claims are inextricably intertwined with Red Light – a company she owns and operates and which is subject to the arbitration provision in the Independent Contractor Agreement. Given the strong presumption in favor of arbitrability, this Court should compel the parties to arbitrate Plaintiff's claims.

### C. The Agreement Delegates the Decision of Arbitrability to the Arbitrator.

Under the plain language of the Independent Contractor Agreement, the question of arbitrability is a threshold dispute that must be resolved in arbitration.

The Supreme Court recently confirmed that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also" 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Courts considering agreements to arbitrate have repeatedly held that where an arbitration provision incorporates a set of arbitration rules which empowers the arbitrator to decide threshold questions of arbitrability, such provisions will be given effect and challenges to arbitrability will be for the arbitrator to decide. *See Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 207-08 (D.C. Cir. 2015) (holding that the parties' incorporation of UNCITRAL Arbitration Rules constitutes clear and unmistakable evidence that the parties intended for an arbitrator to decide issues of arbitrability); *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017) (holding that parties' incorporation of JAMS Rules represented clear and unmistakable evidence of parties' intent to arbitrate arbitrability); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989) (holding that the parties' agreement to have all disputes resolved according to the International Chamber of Commerce's Rules of Arbitration, in which the arbitrator has the power to determine her own jurisdiction, was clear and unmistakable evidence of the parties' intent to arbitrate arbitrability); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("[W]e conclude that

9

the arbitration provision's incorporation of the AAA Rules, like the incorporation of the NASD Code . . . , constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1374 (Fed. Cir. 2006) ("In this case, the parties clearly and unmistakably intended to delegate arbitrability questions to an arbitrator as evidenced by their incorporation of the AAA Rules into the 2001 Agreement."); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

 Here, the Agreement incorporates the JAMS Rules (*see* Exhibit E §11(a)), which provide that: Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter. *See* JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b). As a result, the question of arbitrability is one that must be resolved in the context of an arbitration proceeding. *See Henry Schein, Inc.*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

10

### D. This Action Should be Stayed Pending Completion of Arbitration.

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987) ("[I]f arbitration is indicated by the contract, then a stay is required by [9 U.S.C. § 3]."). Because Plaintiff must be compelled to arbitrate her claims against ACB, the instant action should be stayed pending completion of the arbitration proceedings.

### IV.  CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant ACB Ideas, LLC respectfully requests that this Court enter an Order:

a) granting its motion to compel arbitration;

b) entering an Order directing the parties to proceed to arbitration;

c) staying this action pending resolution of the arbitration proceedings; and

d) award such other and further relief in favor of ACB Ideas, LLC as it deems just and proper.

October 10, 2023                                               Respectfully submitted,

/s/ Jasmine Chalashtori
Jasmine Chalashtori (D.C. Bar No. 1016225)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons Corner, Virginia
Tel: (703) 394-2275
Fax: (703) 790-2623
jasmine.chalashtori@wbd-us.com
*Counsel for ACB Ideas, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 10, 2023 a true and accurate copy of the foregoing was served by CM/ECF on the following:

>Neil Katsuyama
>Erik L. Wilson
>Atkinson, Andelson, Loya, Ruud & Romo
>201 South Lake Ave., Suite 300
>Pasadena, California 91101
>Neil.Katsuyama@aalrr.com
>Erik.Wilson@aalrr.com
>*Counsel for Plaintiff Jennifer Johnson*

>/s/ Jasmine Chalashtori
>Jasmine Chalashtori