

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION – CIVIL ACTIONS BRANCH**
**500 INDIANA AVENUE NW, Room 5000**
**WASHINGTON, DC 20001**

**Date:**    **10/24/2023**

The Honorable Angela Caesar, Clerk
United States District Court for the District of Columbia
3rd and Constitution Avenue, Washington, D.C. 20001

**In Re:**                 **Jennifer Johnson v. ACB Ideas, LLC**

**Civil Action Number:**  **2023-CAB-005582**

**U.S. District Number:**  **1:23-cv-02944**

Dear Ms. Angela Caesar:

        Transmitted herewith are all of the pleadings filed in the above captioned case pursuant to a Petition for Removal Filed in the District of Columbia Superior Court on **10/03/2023** . A certified copy of the docket entries is also enclosed.

        Please acknowledge receipt of our file on a duplicate copy of this letter, and return it to this Court.

                                Sincerely,


                                Joy Jefferson, Branch Chief
                                Civil Actions Branch

**Completed By:** Antonia Taylor
_____

# CASE SUMMARY
## CASE NO. 2023-CAB-005582

| | | |
|---|---|---|
| Jennifer Johnson v. ACB Ideas, LLC | § § § § § | Location: **Civil Actions** |
| | | Judicial Officer: **Lee, Milton C** |
| | | Filed on: **09/11/2023** |
| | | Number: |

---

**Statistical Closures**
10/24/2023    Notice of Removal to USDC

Case Type: **Employment Dispute**
Subtype: **Wrongful Termination**

Case Status: 10/24/2023   Closed

---

| DATE | CASE ASSIGNMENT | |
|---|---|---|

| | | |
|---|---|---|
| | **Current Case Assignment** | |
| | Case Number | 2023-CAB-005582 |
| | Court | Civil Actions |
| | Date Assigned | 09/11/2023 |
| | Judicial Officer | Lee, Milton C |

**A TRUE TEST COPY**

**Clerk, Superior Court of the District of Columbia**

By: ___A.Taylor___
      **Deputy Clerk**

Date: ___October 24, 2023___

---

## PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Plaintiff** | **Johnson, Jennifer** | **Katsuyama, Neil M** |
| | | *Retained* |
| | | 626-583-8600(W) |
| | | **Katsuyama, Neil M** |
| | | *Retained* |
| | | 626-583-8600(W) |
| | | **Katsuyama, Neil M** |
| | | *Retained* |
| | | 626-583-8600(W) |
| **Defendant** | **ACB Ideas, LLC** | |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|

### EVENTS

| Date | Event |
|---|---|
| 10/24/2023 | Case Closed. Notice of Removal. Notices Mailed |
| 10/24/2023 | Notice of Removal Processed and Forwarded to USDC |
| 10/03/2023 | Notice of Removal to US District Court<br>Docketed on: 10/04/2023<br>Party: Defendant ACB Ideas, LLC |
| 09/13/2023 | Affidavit/Declaration of Service of Summons and Complaint<br>*Electronic Service to Jeff Golimowski and Cherylyn Harley LeBon on Tuesday, September 12, 2023 10:29 AM*<br>Docketed On: 09/14/2023<br>Filed By: Plaintiff Johnson, Jennifer<br>Served On: Defendant ACB Ideas, LLC |
| 09/12/2023 | Notice |
| 09/12/2023 | Initial Order [Remote] (Judicial Officer: Lee, Milton C ) |
| 09/11/2023 | Complaint Filed<br>Docketed on: 09/12/2023 |



CASE SUMMARY

## CASE No. 2023-CAB-005582

### HEARINGS

Milton C ;Location: Courtroom 318)
*Vacated*

...ION

**Plaintiff** Johnson, Jennifer
Total Charges                                    120.00
Total Payments and Credits                       120.00
Balance Due as of 10/24/2023                       0.00

eFiled
10/03/2023 3:43:51 PM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| JENNIFER JOHNSON | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 2023-CAB-005582 |
| | ) | |
| ACB IDEAS, LLC | ) | |
| | ) | |
| *Defendant.* | ) | |

**NOTICE OF FILING NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that a Notice of Removal of this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia (a copy of which is attached hereto as **Exhibit A**), was filed today in the United States District Court for the District of Columbia, thereby affecting removal of this action. Pursuant to 28 U.S.C. § 1446 this Court may proceed no further unless and until the case is remanded by the United States District Court for the District of Columbia.

October 3, 2023

Respectfully submitted,

/s/ Jeff Golimowski
Jeff Golimowski (D.C. Bar No. 1044528)
Cherylyn LeBon (D.C. Bar No. 999937)
Jasmine Chalashtori (D.C. Bar No. 1016225)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons Corner, Virginia
Tel: (703) 394-2275
Fax: (703) 790-2623
jeff.golimowski@wbd-us.com
cherylyn.lebon@wbd-us.com
jasmine.chalashtori@wbd-us.com
*Counsel for ACB Ideas, LLC*

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing **NOTICE OF FILING NOTICE OF REMOVAL** was mailed, first-class, postage-prepaid, this 3rd day of October, 2023, to:

> Neil Katsuyama
> Erik L. Wilson
> Atkinson, Andelson, Loya, Ruud & Romo
> 201 South Lake Ave., Suite 300
> Pasadena, California 91101
> Neil.Katsuyama@aalrr.com
> Erik.Wilson@aalrr.com
> *Counsel for Plaintiff Jennifer Johnson*

/s/ Jeff Golimowski
Jeff Golimowski

2

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

JENNIFER JOHNSON                          )
                                          )
    *Plaintiff,*                        )
                                          )
v.                                        )    Case No. _____
                                          )
ACB IDEAS, LLC                            )
                                          )
    *Defendant.*                        )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant ACB Ideas, LLC ("ACB"), by

counsel, hereby files its Notice of Removal of this action from the Superior Court of the District

of Columbia to the United States District Court for the District of Columbia. As grounds for

removal, ACB states as follows:

1.      Within thirty (30) days of service, a civil action brought in a State court may be

removed by a defendant to the district court of the United States for the district and division

embracing the place where such action is pending if the district court would have original

jurisdiction over the matter. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1446(b)(1). For purposes of

removal, the Superior Court of the District of Columbia is considered a "State court." *See* 28

U.S.C. § 1451. The District of Columbia is considered a State for purposes of removal and for

purposes of jurisdiction. *See* 28 U.S.C. § 1451; *see also* 28 U.S.C. § 1332(e).

2.      On or about September 11, 2023, Plaintiff Jennifer Johnson ("Complaint") filed an

action against ACB in the Superior Court for the District of Columbia captioned *Jennifer Johnson*

*v. ACB Ideas, LLC*, Case No. 2023-CAB-005582. A copy of the Complaint and Summons is

attached hereto as **Exhibit A**.

1

3.    Counsel for ACB accepted service of the Complaint by electronic mail on September 12, 2023.  *See* **Exhibit B**, Sept. 12, 2023 e-mail from J. Golimowski to E. Wilson. Thus, this Notice of Removal is timely filed.

4.    Removal of this action is appropriate because diversity jurisdiction exists under 28 U.S.C. § 1332.  Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum of $75,000.00.

5.    Plaintiff's Complaint asserts a variety of claims against ACB arising out of her alleged employment with ACB.  *See generally* Exhibit A.  Plaintiff seeks equitable relief and damages in excess of $75,000.00.  *See* Exhibit A at Civil Information Sheet (demanding $1,000,000.00); *id.* ¶¶ 30, 55, 70 (alleging Plaintiff was entitled to $210,000 annually in wages).

6.    Plaintiff is a citizen of District of Columbia.  *See* Exhibit A ¶ 15.

7.    ACB is a Virginia limited liability company.  *See id.* ¶ 16; *see also* **Exhibit C**, Affidavit of C. Gayl ¶ 7.[1]  It is well-settled that, for purposes of diversity jurisdiction, limited liability companies have the citizenship of each of its members.  *See Jakks Pacific, Inc. v. Accasvek, LLC*, 270 F. Supp. 3d 191, 195 (D.D.C., 2017) ("For the purposes of diversity jurisdiction, unincorporated associations, including LLCs, have the citizenship of each of their members . . . This is distinct from a corporation, which has the citizenship of the State in which it is registered and the State in which it has its principal place of business." (internal citations and quotations omitted)).  ACB has two members:  Arthur Brooks and Candice Gayl.  *See* Exhibit C ¶ 6; **Exhibit D**, Affidavit of Arthur Brooks ¶ 4.  Ms. Gayl is a citizen of, and domiciled in, Virginia.  Mr. Brooks is a citizen of, and domiciled in, Massachusetts.  *See* **Exhibit D**, Affidavit of Arthur Brooks ¶ 2.

---

[1] ACB may submit affidavits in support of its removal petition.  *See Walter E. Campbell Co., Inc. v. Hartford Fin. Servs. Group, Inc.*, 48 F.Supp.3d 53, 55 (D.D.C., 2014)

8.      Accordingly, complete diversity exists between Plaintiff, a citizen of the District of Columbia, and ACB, which has the same citizenship as its two members, Mr. Brooks (Massachusetts) and Ms. Gayl (Virginia). Thus, removal of this action is appropriate under 28 U.S.C. § 1441(a).

9.      Concurrent with the filing and service of this Notice of Removal, Defendant has served a Notice of Filing Notice of Removal on Plaintiff, and has filed such Notice with the Clerk of Court for the Superior Court for the District of Columbia. *See* Exhibit E, Defendant's Notice of Filing Notice of Removal.

10.     If any questions arise as to the propriety of the removal of this action, ACB requests the opportunity to present a brief and argument in support of its position that this case is removable.

11.     By removing this action, ACB is not waiving, and explicitly reserves the right to seek an Order of this Court to compel arbitration based on the Parties' Agreement. *See Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 41 (D.D.C. 2008).

WHEREFORE, ACB Ideas, LLC removes the Superior Court action captioned *Jennifer Johnson v. ACB Ideas, LLC*, Case No. 2023-CAB-005582 from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.


Date:  October 3, 2023                    Respectfully submitted,


                                          /s/ Jeff Golimowski
                                          Jeff Golimowski (D.C. Bar No. 1044528)
                                          Cherylyn LeBon (D.C. Bar No. 999937)
                                          Jasmine Chalashtori (D.C. Bar No. 1016225)
                                          WOMBLE BOND DICKINSON (US) LLP
                                          8350 Broad Street, Suite 1500
                                          Tysons Corner, Virginia
                                          Tel: (703) 394-2275
                                          Fax: (703) 790-2623
                                          jeff.golimowski@wbd-us.com

cherylyn.lebon@wbd-us.com
jasmine.chalashtori@wbd-us.com
*Counsel for ACB Ideas, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing **NOTICE OF REMOVAL** was emailed and mailed, first-class, postage-prepaid, this 3rd day of October, 2023, to:

>Neil Katsuyama
>Erik L. Wilson
>Atkinson, Andelson, Loya, Ruud & Romo
>201 South Lake Ave., Suite 300
>Pasadena, California 91101
>Neil.Katsuyama@aalrr.com
>Erik.Wilson@aalrr.com
>*Counsel for Plaintiff Jennifer Johnson*

>/s/ Jeff Golimowski
>Jeff Golimowski

# EXHIBIT A

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
**Civil Division**

| | |
|---|---|
| Jennifer Johnson<br>1625 O Street NW. Unit 203<br>Washington, D.C. 20009 | Case No.:    2023-CAB-005582 |
| **Plaintiff(s),** | **COMPLAINT** |
| ACB Ideas, LLC<br>1755 Tysons Blvd, 5th Floor<br> | JURY TRIAL DEMANDED |
| **Defendant(s)** | |

<u>COMPLAINT</u>

Plaintiff Jennifer Johnson brings this action against Defendant ACB Ideas, LLC ("ACB Ideas") for: (1) wage theft and failing to pay taxes and benefits required under the Washington, D.C. Labor Code ("Labor Code"); (2) breach of contract; (3) wrongful constructive discharge; (4) retaliation; and (5) intentional infliction of emotional distress. In support of her claims, Ms. Johnson states as follows:

I.    **INTRODUCTION**

1.    Ms. Johnson is the founder of Red Light Public Relations ("Red Light PR"), and longtime best friend of Candice Gayl, the CEO of ACB Ideas. In 2021, Mrs. Gayl hired Red Light PR to do public relations work for Arthur Brooks—a self-proclaimed happiness expert associated with Oprah Winfrey—and several of his for-profit and non-profit entities. Red Light PR promoted Mr. Brooks and his new book *From Strength to Strength*, which debuted at #1 on the New York Times Bestseller List in part due to Ms. Johnson's strategic thinking and leadership at Red Light PR.

2.      Because of the book's breakout success, ACB Ideas was set to experience rapid growth and expansion. But the company had major financial, operational, and administrative problems that were hindering its ability to grow and expand. Unfortunately, Mrs. Gayl had no experience being a successful CEO and was unequipped to fix these issues. The company needed someone capable to step in and help Mrs. Gayl before it was too late. Mrs. Gayl and Mr. Brooks were so impressed with Ms. Johnson that they wanted her to come "in house" at ACB Ideas to help Mrs. Gayl fix the company.

3.      To entice Ms. Johnson into making ACB Ideas her main focus, Mrs. Gayl offered her a compensation package that included a base salary of at least $210,000 a year, plus bonuses, benefits, and a percentage of the gross revenues from Mr. Brooks' books, speaking engagements, and other endeavors. Mrs. Gayl promised that the revenue sharing proceeds alone would allow her and Ms. Johnson to retire comfortably.

4.      However, due to the state of ACB Idea's financials at the time, Mrs. Gayl said it was unclear how much above $210,000 ACB Ideas could pay, and what the precise revenue sharing percentage would be. ACB Ideas promised to determine the final base pay and revenue sharing amounts as soon as possible. Ms. Johnson agreed to the deal because Mrs. Gayl was her friend; she put her trust in Mrs. Gayl and accepted the offer.

5.      Ms. Johnson was employed as ACB Ideas' Chief of Staff (the second-highest executive in the company) from October to December 2022. During that time, Ms. Johnson 60 or more hours a week to fix the company's financials, operations, and policies. The company's financial and operational performance improved dramatically as a result. And Mr. Brooks and Mrs. Gayl repeatedly praised Ms. Johnson and her work.

2

6.      But Ms. Johnson soon learned that there were deeper legal problems at the company.   As Chief of Staff, Ms. Johnson sat down with and interviewed each employee. Shockingly, Ms. Johnson discovered that multiple employees were improperly classified as independent contractors and that ACB Ideas was knowingly and intentionally misclassifying them in order to save money on overtime, benefits, and taxes.

7.      When Ms. Johnson confronted Mrs. Gayl about it, Mrs. Gayl stated that she and Mr. Brooks had already discussed the issue and decided to keep the employees misclassified because they were afraid of a possible recession.  Keeping the employees misclassified would save money and help the company weather any future financial crisis.   Ms. Johnson also discovered the ACB Ideas targeted their hiring towards vulnerable stay-at-home mothers desperate to re-enter the workforce and willing to accept misclassification as the price of entry.

8.      But it got worse.   Shortly thereafter, Ms. Johnson learned that one of the misclassified employees had been forced to work full time (and overtime) hours for part time pay.  The employee had complained and gotten a raise—but only for her full time hours going forward; she would not be paid for the months of extra hours she had already worked.  When the employee later reiterated that she wanted to be classified as an employee, Mrs. Gayl retaliated against her by slashing her raise by 33%, applying the pay cut retroactively, and withholding the money from the employee's future earnings.

9.      Ms. Johnson confronted Mrs. Gayl about this, too.  It did no good.  Mrs. Gayl continued to retaliate against the employee by attempting to force her to take an even steeper pay cut in exchange for properly classifying her as an employee.  When the employee refused the additional pay cut, she was terminated.

3

10.    Ms. Johnson was distraught by ACB Ideas' actions and disillusioned by Mr. Brooks and Mrs. Gay's behavior. Their exploitation of hard working mothers and flagrant violation of their legal rights directly contradicted Mr. Brooks' and ACB Ideas' brands. Neither Mr. Brooks nor Mrs. Gay practiced what they preached.

11.    Ms. Johnson told Mrs. Gay, that her and Mr. Brooks' actions were illegal and wrong. Days later, ACB Ideas retaliated against Ms. Johnson, too: ACB Ideas fired her company (Red Light PR, which was under a separate contract), slashed Ms. Johnson's base wages by at least 32%, and refused to pay her for any of the hundreds of hours of work she had already performed. Ms. Johnson resigned in protest. To date, she has never been paid a penny for any of the work she performed.

12.    Ms. Johnson was left with no choice to but bring this lawsuit to vindicate her rights.

## II.    JURISDICTION

13.    The Court has jurisdiction over the subject matter of this case pursuant to D.C. Code § 11-921 and D.C. Code § 32-1308.

14.    This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-422 and D.C. Code § 13-423.

## III.    PARTIES

15.    Plaintiff Jennifer Phillips Johnson is an individual residing in the District of Columbia. At all relevant times, Plaintiff resided in the District of Columbia and worked for ACB Ideas as an employee in the District of Columbia.

16.    Defendant ACB Ideas, LLC was a District of Columbia limited liability company that converted to a Virginia limited liability company. At all times relevant to this case, ACB

4

Ideas was a District of Columbia limited liability company that employed Ms. Johnson as its

Chief of Staff.

I.\.     **FACTS**

    **A.**    **ACB Ideas Recruits Ms. Johnson To Help Fix The Company**

    17.    Ms. Johnson is the founder and CEO of Red Light PR, a public relations firm

specializing in brand strategy and publicity, product placement, and producing and marketing

special events.

    18.    Ms. Johnson founded Red Light PR in 2002 out of a single office in Los Angeles,

California.  Through Ms. Johnson's hard work, business acumen, and leadership as CEO, Red

Light PR expanded its offices and operations to New York City, Washington, D.C., Miami, and

Arizona.  The company has also represented some of the biggest and most prestigious

companies, brands, and celebrities in the United States, including Disney, Paul Frank, and

Zendaya.

    19.    In June 2021, Red Light PR was engaged by the Abigail Adams Institute

("Abigail Adams"), a non-profit run by Mr. Brooks and Mrs. Gayl, to provide PR services for

Abigail Adams and Mr. Brooks.  Mrs. Gayl knew Ms. Johnson because the two had been fast

friends for nearly 30 years.  When Mr. Brooks and Mrs. Gayl formed ACB Ideas, Red Light

PR's engagement was transferred to that entity.

    20.    The scope of Red Light PR's work was laid out in an independent contractor

agreement, which cabined Red Light PR's work to PR services such as social media engagement,

event planning and coordination, newsletters, and other media management.  The most important

PR work, however, was promoting Mr. Brooks and his upcoming book *From Strength to

Strength*.

5

21.    As a result of Red Light PR's outstanding work, *From Strength to Strength* debuted at #1 on the New York Times Bestseller list.  Ms. Philips Johnson and Red Light PR were expressly thanked for their invaluable contributions in the book's acknowledgments. Mr. Brooks and ACB Ideas also recommended Ms. Philips Johnson and Red Light PR to other authors to promote their books.

22.    Red Light PR's successful public relations campaign directly resulted in ACB Ideas and Mr. Brooks getting interviews with Oprah Winfrey ("Oprah"), major news organizations, podcasts, and magazines.  The campaigns also directly resulted in additional speaking engagements and other business opportunities, including a book co-authored with Oprah named *Build the Life You Want: The Art and Science of Getting Happier*.

23.    Mrs. Gayl and Mr. Brooks were so impressed by Ms. Johnson and her leadership of Red Light PR that Mrs. Gayl began recruiting Ms. Johnson to come "in house" at ACB Ideas to help fix systemic problems that could hamper its expansion as a result of Red Light PR's successful public relations campaigns.

24.    Mrs. Gayl was frank with Ms. Johnson: ACB Ideas had serious operational, staffing, leadership, and financial problems that Mrs. Gayl was not equipped to fix.  Mrs. Gayl had no experience being a successful CEO or leading a financially sound business of any size. Mrs. Gayl had only recently been promoted to CEO after a corporate reorganization.  Mrs. Gayl had owned her own company in the past, but it failed.  Mrs. Gayl also had no experience properly maintaining corporate books, records, and financial accounts.  Mrs. Gayl was unequipped to deal with these issues or supervise others in doing so.

25.    ACB Ideas was set to experience explosive growth, but it would falter at the gate if it could not get its operations in order beforehand.  The company needed someone capable to

6

step in and drive corrective action before it was too late. Mrs. Gayl pleaded with Ms. Johnson to come on board and help her fix the company.

**B.    ACB Ideas Hires** Ms. Johnson As Chief Of Staff For At Least $210,000 A **Year**

26.    Mrs. Gayl offered Ms. Johnson the second-highest C-Suite position at the company: Chief of Staff. That was Mrs. Gayl's title until the role of CEO was created. Mrs. Gayl promised Ms. Johnson a generous compensation package, complete with a revenue sharing deal so lucrative that it would allow Ms. Johnson to comfortably retire.

27.    But Ms. Johnson was unwilling to abandon Red Light PR—the company she had built from the ground up—for ACB Ideas. To entice Ms. Johnson into making ACB Ideas her main focus, Mrs. Gayl offered her a generous compensation package that included a base salary of at least $210,000 each year, plus bonuses, benefits, and percentage of revenues from Mr. Brooks' books, speaking engagements, and other endeavors ("Agreed-Upon Wages").

28.    However, due to the state of ACB Idea's financials at the time, Mrs. Gayl said it was unclear how much above $210,000 ACB Ideas could pay, and what the precise revenue sharing percentage would be. ACB Ideas promised to determine the final base pay and revenue sharing amounts as soon as possible—but in no case would her base pay be less than $210,000 a year.

29.    Ms. Johnson was also promised a happiness-centered work environment. ACB Ideas core purpose, and Mr. Brooks' core brand, was spreading happiness. Indeed, Mr. Brooks routinely teaches employers how to create happy work environments filled with happy employees.

7

30.     Based on these representations—and Ms. Johnson's long term friendship to Mrs. Gayl—Ms. Johnson and ACB Ideas then entered into an oral employment agreement that included the following terms:

a.     Ms. Johnson would come "in house" as Chief of Staff—a full time employee of ACB Ideas;

b.     Red Light PR would continue to be ACB Ideas' public relations company under its separate independent contractor agreement;

c.     Ms. Johnson would be paid wages of at least $210,000 each year, plus benefits, bonuses, and revenue sharing;

d.     The amount of base wages over $210,000 would be determined later by agreement of the parties based on the outlook of the Company's budgets and finances;

e.     The amount of bonuses and revenue sharing were also to be determined later.

31.     Upon information and belief, $210,000 a year is more than $100,000 *less* than the median annual wages for a Chief of Staff at a for-profit company in Washington, D.C.  ACB Ideas repeatedly told Ms. Johnson that she was worth more than $210,000 and that ACB Ideas would make every effort to pay her more.  ACB Ideas specifically mentioned that a base wage of $150,000 per year was far too low.

**C.     Ms. Johnson Works 60 Hour Weeks as Chief of Staff With No Pay**

32.     After entering into the oral employment agreement, Ms. Johnson got to work as Chief of Staff and began turning the company around.

33.     Ms. Johnson expected ACB Ideas to have some problems—but she was completely unprepared for what awaited her.  ACB Ideas was in total disarray from a business

8

and legal perspective: it had pervasive financial, budgeting, staffing, operational, and management problems. Multiple employees were also intentionally misclassified as independent contractors in order to save the company money on overtime, benefits, and taxes.

34.     Fixing these problems would require a herculean effort. Ms. Johnson would have to devote herself almost completely to ACB Ideas—so much so that Red Light PR would have to turn down clients and business opportunities due to her absence. She raised these issues to Mrs. Gayl, who repeatedly promised Ms. Johnson that her compensation package and ACB Ideas' future business with Red Light PR would more than make up for it. In reliance on these promises, Ms. Johnson began working up to 60 hour weeks—days, nights, and weekends—to turn ACB Ideas around.

35.     Ms. Johnson spearheaded fixing all aspects of the business: finances, budgets, human resources, staffing, administration, hiring/firing, salaries, and management of employees. Ms. Johnson's results spoke for themselves: ACB Ideas' financial position drastically improved, employee and contractor productivity increased, salaries to unqualified nepotism hires were reduced, and salaries for overworked and underpaid employees were set to be increased. ACB Ideas' and Mr. Brooks' brands were stronger than ever. Both Mrs. Gayl and Mr. Brooks lauded Ms. Johnson's performance and touted her extraordinary results to other companies, authors, and speakers.

36.     But despite her outstanding performance, ACB Ideas never paid Ms. Johnson a dollar of compensation. She was repeatedly promised that payment would be coming. No payment ever came.

37.     But, upon information and belief, ACB Ideas always had the resources to pay Ms. Johnson:

9

a.  *First*, much (if not all) of ACB Ideas' payroll and administrative expenses were paid by Abigail Adams.  Upon information and belief, Abigail Adams was used as a tax shelter to help ACB Ideas avoid paying **taxes on a $5 million seed investment** provided to Arthur Brooks by a wealthy donor.  Abigail Adams used its "non-profit" status to receive the $5 million tax free, then funnel it to ACB Ideas and Mr. Brooks' other endeavors by paying those companies' expenses, subsidizing Mr. Brooks' speaking fees, and covering other of Mr. Brooks' personal expenses. Thus, ACB Ideas operated without normal overhead.  It had no excuse for stealing from its employees.

b.  *Second*, Ms. Johnson's work as Chief of Staff had saved the company substantial sums of money.  Thus, the company was <u>more</u> profitable than when Ms. Johnson started.

c.  *Third*, ACB Ideas secretly paid Mrs. Gayl a discretionary bonus of at least $60,000 while Ms. Johnson was employed there.  That was enough to cover Ms. Johnson's base wages during her term of employment. Discretionary bonuses should only be paid if a company has enough money to cover its payroll obligations.  ACB Ideas either had the money to pay Ms. Johnson and lied about it, or the CEO stole it and put it in her own pocket.

**D.    Ms. Johnson And Other Employees Complain About Labor Code Violations**

38.    Because she was Chief of Staff, other employees began to complain to Ms. Johnson that they were misclassified as independent contractors.  They also told Ms. Johnson that their misclassification was well known—multiple people had told Mrs. Gayl she was

10

misclassifying employees, but Mrs. Gayl refused to reclassify them. Ms. Johnson also believed—based on her extensive experience as CEO of Red Light PR—that these independent contractors were misclassified employees.

39.     Through her conversations with these other employees, Ms. Johnson also learned that ACB Ideas was using predatory hiring practices specifically designed to find employees who would accept being misclassified as independent contractors. ACB Ideas would advertise job openings in a local "DC Moms" community webpage to find stay-at-home mothers who desperately wanted to return to the workforce, but had few opportunities to do so. ACB Ideas would then exploit that desperation by hiring them as misclassified independent contractors to save money on benefits and taxes. Mrs. Gayl and others made them feel lucky to have a job and too afraid to enforce their rights for fear of reprisal. Screaming, belittling, berating, and other forms of bullying and workplace abuse were commonplace by Mrs. Gayl. Speaking up was an act of disloyalty. Mrs. Gayl demanded loyalty to ACB Ideas above all else, even if that meant employees had to sacrifice their Labor Code rights.

40.     Ms. Johnson reported what she learned to Mrs. Gayl and told her that ACB Ideas needed to reclassify multiple independent contractors as employees. She also recommended that multiple misclassified employees receive pay raises, as they were underpaid compared to the market and to the value they created for the company.

41.     Mrs. Gayl stated that she and Mr. Brooks had already discussed the issue and decided to keep the employees misclassified because they were afraid of a possible recession. Keeping the employees misclassified would save money and help the company weather any future financial crisis.

018477.00008
42413972.1

42.    Ms. Johnson reiterated to Mrs. Gayl that misclassification was illegal and that ACB Ideas did not have the option to delay making them employees.  Mrs. Gayl refused to budge and became angry that Ms. Johnson kept pushing the issue.

43.    Ms. Johnson also complained that she had not yet been paid and that Mrs. Gayl had made no effort to finalize the amount of Ms. Johnson's compensation.  Mrs. Gayl made excuses, but no payments.  Mrs. Gayl again became angry that Ms. Johnson kept pushing the company to spend money to fix its Labor Code violations.

E.    **ACB Ideas Retaliates Against Ms. Johnson And The Other Another Employee For Their Complaints**

44.    Around the first week of December 2022, ACB Ideas suddenly terminated one of the misclassified employees that was complaining about her misclassification.  Ms. Johnson—despite being Chief of Staff—was not consulted prior to the firing.  As the employee later explained (and Ms. Gayl confirmed) to Ms. Johnson:

a.    The employee had been hired part time, but had been required to work full time hours starting in July 2022 without additional compensation.  The employee felt that ACB Ideas had planned to do this because Mrs. Gayl told her that she was not allowed to track her hours—which would make it more difficult to know and prove that she was working more hours than she was being paid for.

b.    The employee complained to Mrs. Gayl about the repeated underpayment in August 2022.  Mrs. Gayl agreed to pay the employee a full time salary starting in September 2022.  The employee would not receive any pay for the additional hours she had already worked in July and August.

12

018477.00008
42413972.1

c.      Mrs. Gayl refused to budge.  The employee accepted Mrs. Gayl's offer because she felt she had no choice.

d.      The employee also complained to Mrs. Gayl that she was an employee, not an independent contractor, and wanted to be properly classified as an employee.  The misclassification was costing the employee too much in lost compensation and other employee benefits, including more favorable tax rates.

e.      After receiving these complaints, Mrs. Gayl emailed the employee at the end of November 2022 and retroactively reduced her pay raise by 33%.  The employee would still have to work upwards of 50 hours per month with no overtime pay (because she was misclassified as an independent contractor instead of an employee)—but would now do so for significantly less money.

f.      Because the pay cut was retroactive, Mrs. Gayl told the employee she had to pay back ACB Ideas the 33% she was allegedly "overpaid" in September and October.  Mrs. Gayl told the employee that ACB Ideas would deducted those overages from her future wages.  No offset was provided for the employees' unpaid wages from July and August (or other losses caused by the employee being misclassified).

g.      The employee felt that this was illegal and told Mrs. Gayl so.

h.      Mrs. Gayl responded by offering the employee an even worse deal: the employee would be classified as an employee starting in 2023, but only if

13

018477.00008
42413972.1

she took an even more substantial pay cut.  The employee refused and Mrs. Gayl immediately terminated her.

45.     Ms. Johnson was shocked and distraught over the employee's firing.  The employee was a hard working mother with young children at home.  She had just helped launch a New York Times bestseller and was supposed to be receiving a raise— not a salary reduction and termination.  Ms. Johnson again confronted Mrs. Gayl, telling her that what ACB Ideas had done was illegal and wrong.  Mrs. Gayl did not care.

46.     After the employee was terminated, Ms. Johnson began to fear that she would face a similar fate.  Mrs. Gayl appeared to have cut the employee's salary and terminated her for: (1) complaining about misclassification and underpayment; and (2) being forced to subsidize her long-overdue reclassification out of her own wages.  Ms. Johnson had been the employee's most vocal advocate.

47.     Ms. Johnson had also been complaining about her own non-payment and the fact that her employment contract had yet to be finalized.  If Mrs. Gayl similarly retaliated against Ms. Johnson, it would be devastating.  Mrs. Gayl had promised to expand Red Light PR's role and, in reliance on that promise, Ms. Johnson had just reoriented the company to focus on ACB Ideas.  Red Light PR turned down new clients, let clients go, and gave its staff raises in anticipation of the additional work they would soon be expected to do for ACB Ideas.

48.     Days later, Ms. Johnson's fears came true.  Less than a week after Ms. Johnson complained about the employee's firing, ACB Idea began retaliating against her.  Mrs. Gayl: (1) called Ms. Johnson into a meeting to discuss her contract; (2) fired Ms. Johnson's company Red Light PR; and (3) instructed Ms. Johnson to train a replacement company with zero public relations experience.

14

49.     At the meeting, Mrs. Gayl told Ms. Johnson that she would only be paid $150,000

a year going forward as Chief of Staff.   That was: (1) 32% less than the minimum base wage

they had agreed to; (2) nearly $170,000 less than the median Chief of Staff salary in Washington,

D.C.; and (3) the exact same wage Mrs. Gayl had previously stated was unacceptably low.   Ms.

Johnson was not offered any back pay at all.

50.     When it became clear that Mrs. Gayl's terms were being offered on a take-it-or-

leave-it basis, Ms. Johnson rejected the offer and resigned in protest.

51.     Ms. Johnson then demanded the compensation she was owed.  ACB Ideas refused

to pay her a penny.  Ms. Johnson was left with no choice to but bring this lawsuit to vindicate her

rights.

## COUNT I: FAILURE TO PAY WAGES WHEN DUE
## (VIOLATION OF D.C. CODE § 32-1302)

52.     Ms. Johnson hereby repeats and re-alleges each and every paragraph of this

Complaint as if fully set forth herein.

53.     Ms. Johnson was employed as ACB Ideas' Chief of Staff from October 2022 to

December 2022.   This was a full time "in house" employee position held by Ms. Johnson

individually (not by Red Light PR).

54.     ACB Ideas is an "employer" that employed Ms. Johnson as an "employee," as

defined by the Minimum Wage Revision Act ("MWRA").

55.     For her employment as Chief of Staff, Ms. Johnson was repeatedly promised

regular wages of at least: (a) $210,000 annually; (b) bonuses; (c) employee benefits; and (d)

revenue sharing proceeds.

56.     The MWRA requires employers to pay their employees on regular intervals.

Non-exempt employees are required to be paid at least twice per month; exempt employees are

018477.00008
42413972.1

these pay periods to the employee before the employee begins working.

57.    ACB Ideas never paid Ms. Johnson any wages or compensation.  ACB Ideas also never designated any pay periods for Ms. Johnson.

58.    ACB Ideas violated the MWRA by: (1) failing to pay Ms. Johnson her wages at the regular intervals prescribed by the MWRA; and (2) failing to designate Ms. Johnson's pay scale before she began working.

59.    Under D.C. Code § 32-1308, employers who violate this provision are required to pay the affected employee back wages, treble damages on the back wages, statutory penalties, costs, and attorney's fees.  Interest is also accrued.  Each failure to pay at the regular interval accrues a separate statutory penalty.

60.    Moreover, ACB Ideas' repeated violations were willful under D.C. Code § 32-1307.  Each willful violation is a misdemeanor and subjects ACB Ideas (in addition to other damages and penalties) to fines of $5,000 or $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation).

## COUNT II: FAILURE TO PAY WAGES AT RESIGNATION OR DISCHARGE (VIOLATION OF D.C. CODE § 32-1303)

61.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

62.    Under the MWRA, employees who do not have written employment contracts must be paid all outstanding wages within seven days of their resignation, or the next regular payday, whichever is earlier.

63.    Employers who fail to timely pay such final wages must pay the employee (in addition to all outstanding wages and other damages) liquidated damages of: (a) 10% of the

018477.00008
42413972.1

Employers must all pay all costs, attorney's fees, interest, and any other penalties.

64.   Ms. Philips Johnson had an oral employment contract.

65.   Ms. Philips Johnson was constructively terminated (i.e., resigned) from ACB Ideas on or around December 13, 2022.

66.   ACB Ideas did not pay Ms. Johnson any wages after she resigned.

67.   ACB Ideas' repeated violations of the MWRA were willful and intentional, not accidental or negligent.  Willful violations are punishable by fines of $5,000 to $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other damages and penalties.

### COUNT III: FAILURE TO PAY WAGES CONCEDED TO BE DUE
### (VIOLATION OF D.C. CODE § 32-1304)

68.   Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

69.   If there is a bona fide dispute about whether an employee is owed wages, the MWRA requires employers to give the employee written notice of the disputed amount and pay the employee all wages not subject to a bona fide dispute.  Employers must provide this notice and payment to their employees at: (1) each applicable pay period; and (2) discharge/resignation.

70.   The oral employment contract between ACB Ideas and Ms. Johnson established her wages as at least $210,000 in base compensation each year, plus bonuses, benefits, and revenue sharing.  ACB Ideas never disputed that Ms. Johnson was entitled to this compensation while she was employed and never tried to renegotiate that compensation until the day Ms. Johnson resigned.  There is no bona fide dispute that ACB Ideas owes Ms. Johnson the Agreed-Upon Wages and never paid them.

17

018477.00008
42413972.1

71.     Even after Ms. Johnson resigned, ACB Ideas never provided written notice that it disputed her entitlement to any of the Agreed-Upon Wages. Thus, all of Ms. Johnson's back pay was conceded to be due.

72.     At the very least, when ACB Ideas attempted to cut Ms. Johnson's base wage to $150,000 each year, it conceded that Ms. Johnson was owed at least that much in base wages. Accordingly, there could be no bona fide dispute that ACB Ideas owed and failed to pay those wages.

73.     Employers who fail to timely pay such wages must pay the employee all outstanding wages, triple the unpaid wages, and all costs, attorney's fees, interest, and any other penalties. Each failure to pay or give notice is a separate violation.

74.     ACB Ideas' repeated violations of the MWRA were willful and intentional, not accidental or negligent. Willful violations are punishable by fines of $5,000 to $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other damages and penalties.

## COUNT IV: FAILURE TO PAY MINIMUM WAGE
## (VIOLATION OF D.C. CODE § 32-1003)

75.     Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

76.     The MWRA requires employers to pay non-exempt employees the minimum wage set forth by D.C. Code § 32-1003(a).

77.     Ms. Johnson's oral employment agreement did not classify her as an exempt employee, nor does Ms. Johnson qualify as an exempt employee under the MWRA.

18

78.    ACB Ideas and Ms. Johnson also never agreed that Ms. Johnson would be an exempt employee paid on a salary basis.  Thus, Ms. Johnson was a non-exempt employee required to be paid her wages on an hourly basis.

79.    Ms. Johnson was never paid any wages by ACB Ideas.  Thus, ACB Ideas violated the MWRA by failing to pay Ms. Johnson at least the statutory minimum wage for all hours worked.

80.    Employers who fail to pay minimum wages must pay the employee all outstanding wages, triple the unpaid wages, and all costs, attorney's fees, interest, and any other penalties.  Each failure to pay is a separate violation.

81.    ACB Ideas' repeated violations of the MWRA were willful and intentional, not accidental or negligent.  Willful violations are punishable by fines of $5,000 to $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other damages and penalties.

## COUNT V: FAILURE TO PAY OVERTIME
## (VIOLATION OF D.C. CODE § 32-1003)

82.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

83.    The MWRA requires employers to pay non-exempt employees overtime at the rate of 1.5 times their regular hourly rate for any work week in which the employee works more than 40 hours.

84.    Ms. Johnson was a non-exempt hourly employee under the MWRA and her oral employment agreement.

85.    Ms. Johnson routinely worked 60 hours per week for ACB Ideas—as demonstrated by security and computer systems logs (including parking garage and building

19

access logs), building cameras, witnesses, and documentary evidence such as emails, texts, phone records, and other contemporaneous business records.

86.    Ms. Johnson's agreed-upon base wages were at least $105 per hour.  Thus, Ms. Johnson's overtime rate was at least $158 per hour.

87.    Ms. Johnson was never paid any wages by ACB Ideas.  Thus, ACB Ideas violated the MWRA by failing to pay Ms. Johnson her overtime wages for all hours worked.

88.    Employers who fail to pay overtime wages must pay the employee all outstanding wages, triple the unpaid wages, and all costs, attorney's fees, interest, and any other penalties. Each failure to pay is a separate violation.

89.    ACB Ideas' repeated violations of the MWRA were willful and intentional, not accidental or negligent.  Willful violations are punishable by fines of $5,000 to $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other damages and penalties.

## COUNT VI: FAILURE TO PAY UNIVERSAL PAID LEAVE TAXES (VIOLATION OF D.C. CODE § 32-541)

90.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

91.    The Universal Paid Leave Act ("UPLA") requires "covered employers" to make contributions to the Washington, D.C. Universal Paid Leave Fund in order to fund paid leave. These mandatory contributions are calculated as a percentage of wages owed to its "covered employees."

92.    ACB Ideas is a "covered employer" that employed Ms. Johnson as a "covered employee" under the UPLA.

20

93.    ACB Ideas never paid its UPLA contributions for Ms. Johnson. This violated the UPLA.

94.    Employers who fail to make UPLA contributions must pay the employee all damages, triple damages, and all costs, attorney's fees, interest, and any other penalties.

## COUNT VII: FAILURE TO PROVIDE PAID SICK LEAVE
## (VIOLATION OF D.C. CODE § 32-531)

95.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

96.    The SSLA requires employers to provide employees with paid sick leave, which accrues based upon hours worked at a rate that depends on the employer's total number of employees.

97.    ACB Ideas is an "employer" that employed Ms. Johnson as an "employee," as defined by the SSLA.

98.    ACB Ideas never accrued paid sick leave for Ms. Johnson, which was a violation of the SSLA.

99.    Employers who fail to provide sick leave must pay the employee damages, costs, attorney's fees, interest, and other penalties.

## COUNT VIII: BREACH OF CONTRACT

100.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

101.    ACB Ideas and Ms. Johnson entered into an oral employment agreement in which Ms. Johnson was to be paid the Agreed-Upon Wages.

102.    The oral employment agreement is a valid and enforceable contract between ACB Ideas and Ms. Johnson. The oral employment agreement contained, and the parties agreed upon,

21

the material terms of the contract. The parties agreed to negotiate the remaining terms in good faith.

103.    The contract was accepted in October 2022, no later than the date Ms. Johnson began performing work for ACB Ideas and ACB Ideas began accepting Ms. Johnson's work.

104.    No provision of the oral employment agreement, nor any action or inaction by any party, relieved ACB Ideas of its obligations to pay Ms. Johnson the Agreed-Upon Wages.

105.    Ms. Johnson performed all covenants, conditions, and promises required to be performed by her under the oral employment agreement.

106.    ACB Ideas materially breached the oral employment agreement, including by: (1) failing to pay Ms. Johnson any of the Agreed-Upon Wages; and (2) failing to negotiate the remaining compensation terms.

## COUNT IX: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

107.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

108.    Every contract contains an implied covenant of good faith and fair dealing that requires each contracting party to act in good faith and to not deprive the other party the benefits of the bargain.

109.    ACB Ideas' breached the implied covenant of good faith and fair dealing in the oral employment agreement by: (1) failing to pay Ms. Johnson any of the Agreed-Upon Wages, without a good faith basis for doing so; and (2) failing to negotiate the remaining terms in good faith.

## COUNT X: FAILURE TO NEGOTIATE OPEN CONTRACT TERMS IN GOOD FAITH

110.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

22

111.    The oral employment agreement between Ms. Johnson and ACB Ideas required ACB Ideas to negotiate the remaining compensation terms in good faith.

112.    Ms. Johnson attempted to negotiate the finalization of these terms.  ACB Ideas refused to negotiate these terms in good faith.  Good faith required ACB Ideas to offer terms consistent with the Agreed-Upon Wages.  ACB Ideas offered retaliatory wages far below the Agreed-Upon Wages and refused to negotiate compensation consistent with the Agreed-Upon Wages.  ACB Ideas negotiated in bad faith, not good faith.

## COUNT XI: WRONGFUL CONSTRUCTIVE DISCHARGE

113.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

114.    ACB Ideas engaged in repeated and ongoing violations of the D.C. Labor Code, which ACB Ideas expressly and/or implicitly asked Ms. Johnson to accept and enforce against other employees.  Other employees were terminated in retaliation for complaining about these Labor Code violations, which Ms. Johnson also complained about.

115.    Additionally, ACB Ideas failed to pay Ms. Johnson for months, refused to negotiate the final terms of her employment agreement, then breached her employment contract and tried to force her to accept a 32% pay cut with no back pay.  These repeated, ongoing Labor Code violations created intolerable working conditions that no employee would or should accept.  Additionally, ACB Ideas made it clear that if Ms. Johnson had not accepted the pay cut, and had not resigned, ACB Ideas would have terminated her.  This further demonstrates the intolerable working conditions that Ms. Johnson was subjected to.

116.    Ms. Johnson resigned because her working conditions were intolerable and unacceptable.  Any reasonable employee would have resigned under the circumstances.

23

## COUNT XII: RETALIATION
## (VIOLATION OF D.C. CODE §§ 32-1010, 1311)

117.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

118.    D.C. Code § 32–1010 makes it illegal for any employer to take any adverse actions (*e.g.*, to discharge, constructively discharge, penalize, threaten, or retaliate in any way) against an employee for reporting the employer's potential Labor Code violations to any person.

119.    Any adverse action taken against the employee within 90 days of such reporting creates an automatic presumption that the adverse action was taken in retaliation for the reporting.   This presumption can only be rebutted by clear and convincing evidence that retaliation played no part whatsoever in the adverse action.

120.    Employers who retaliate against employees must pay: (1) civil penalties up to $10,000; (2) liquidated damages of double the civil penalty; (3) lost compensation; (4) front pay (and/or reinstate the employee); and (5) all costs, attorneys' fees, interest, and any other fines and penalties.

121.    Ms. Johnson complained about ACB Ideas' Labor Code violations and, within days, ACB Ideas breached its oral employment agreement with Ms. Johnson and constructively discharged her.   ACB Ideas did so in direct retaliation for Ms. Johnson complaining about ACB Ideas' various Labor Code violations.

## COUNT XIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

123.    ACB Ideas' actions were extreme, outrageous, and intentional.   They were also designed to maximize Ms. Johnson's emotional distress.   ACB Ideas deliberately exploited the

24

long-standing friendship between Mrs. Gayl and Ms. Johnson to convince Ms. Johnson to begin

working for ACB Ideas under the promise of receiving the Agreed-Upon Wages. ACB Ideas

then worked Ms. Johnson like a dog for 60 or more hours a week to fix the company's extensive

problems. ACB Ideas induced Ms. Johnson to keep working, despite her not receiving any

compensation, by repeatedly promising that she would be paid the Agreed-Upon Wages soon.

All of ACB Ideas' promises were inexorably tied to Ms. Johnson's friendship with Mrs. Gayl.

Indeed, Ms. Johnson only took the position—and remained in the position despite ACB Ideas'

misconduct—because Mrs. Gayl was one of her best friends.

124.    Ms. Johnson relied on Mrs. Gayl's and ACB Ideas' representations to work and

continue working. Ms. Johnson's 60 hour a week schedule prevented her from both: (1) gaining

new clients for Red Light PR; and (2) keeping existing clients that required her personal

attention. At the same time, Ms. Johnson was retooling Red Light PR—at ACB Ideas' request—

to focus on ACB Ideas, including giving raises to the Red Light PR staff in anticipation of the

imminent ACB Ideas' work. ACB Ideas was aware of all these facts as they occurred.

125.    As time went on, the lack of compensation from ACB Ideas, combined with the

decreased revenues and increased expenses at Red Light PR, put great financial and emotional

stress on Ms. Johnson. Her entire financial future, and friendship with Mrs. Gayl, was now tied

to ACB Ideas and whether it would retaliate against her for trying to correct the company's

Labor Code abuses. ACB Ideas knew all this but kept inducing to her work through promises of

future payment and work.

126.    Upon information and belief, when ACB Ideas decided to retaliate against Ms.

Johnson and punish her for reporting Labor Code violations, ACB Ideas constructed its

25

punishment and retaliation to inflict as much financial and emotional distress as it could on Ms. Johnson.

127.   ACB Ideas knew that having Mrs. Gayl: (1) fire Red Light PR on the eve of taking over its expanded role; and (2) constructively terminating Ms. Johnson would cause Ms. Johnson severe emotional distress.  ACB Ideas knew this because Mrs. Gayl was Ms. Johnson's longtime friend, and the two had discussed these very issues.  Mrs. Gayl and ACB Ideas both wanted to inflict severe emotional and financial damage on Ms. Johnson as part of their retaliation.  That is exactly what they did.

128.   ACB Ideas' retaliation forced Ms. Johnson to resign and begin picking up the pieces of Red Light PR, which now had severely reduced income, a reduced client list, and increased expenses all attributable to ACB Ideas.  Because ACB Ideas refused to pay her, Ms. Johnson also had no compensation to offset these financial hardships.  Worst of all, Ms. Johnson had also been duped and betrayed by one of her best friends.

129.   The result of ACB Ideas' retaliation was severe emotional distress on Ms. Johnson that no reasonable person should have to endure: (1) fear that everything Ms. Johnson had built was about to be destroyed; (2) grief over the betrayal by one of her best friends; and (3) shame, humiliation, and embarrassment about being duped, dumped, and retaliated against by a company run by one of her best friends.  As a result, Ms. Johnson experienced severe depression and anxiety, with physical manifestations.  These symptoms continue to this day.

## COUNT XIV: QUANTUM MERUIT
### (IN THE ALTERNATIVE)

130.   Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

26

131.    To the extent no contract between Ms. Johnson and ACB Ideas existed, Ms. Johnson is still entitled to be paid the market value of the work she provided to ACB Ideas as its Chief of Staff.

132.    Ms. Johnson provided valuable services to ACB Ideas as its Chief of Staff.  ACB Ideas accepted those services knowing, or being reasonably certain, that Ms. Johnson expected to be compensated.  Indeed, Ms. Johnson was not an intern or volunteer at ACB Ideas—she was its second highest executive.  After taking the value of Ms. Johnson's services, ACB Ideas then failed to compensate Ms. Johnson for those services.

133.    ACB Ideas cannot accept Ms. Johnson's valuable services under such conditions without compensating her for the market value of those services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    Compensatory damages (including back pay, front pay, emotional distress damages, and lost revenue sharing proceeds), in amounts to be determined at trial;

B.    Reinstatement of employment at the Agreed-Upon Wages, with participation in all revenue sharing proceeds between termination and reinstatement;

C.    An injunction prohibiting further retaliation against Ms. Johnson;

D.    Treble and other statutory liquidated damages, in amounts to be determined at trial;

E.    Statutory and civil penalties/fines, in amounts to be determined at trial;

F.    Consequential damages, in amounts to be determined at trial;

G.    Punitive damages, in amounts to be determined at trial;

H.    Prejudgment interest, to be determined at trial;

I.    All costs and reasonable attorneys' fees; and

27

J.     Any and all other legal and equitable relief this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a 12-person trial by jury on all issues triable by a jury in this action.

Dated:  September 11, 2023       ATKINSON, ANDELSON, LOYA, RUUD &
ROMO

By:      _____

Neil Katsuyama (SBN 1027960)
Erik L. Wilson (pro hac vice pending)
Neil.Katsuyama@aalrr.com / (626) 773-7767
Erik.Wilson@aalrr.com / (626) 773-7666
Atkinson, Andelson, Loya, Ruud & Romo
201 South Lake Ave., Suite 300
Pasadena, California 91101
Attorneys for Plaintiff Jennifer Johnson

28

CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

_____
                                            Plaintiff
                        vs.

                                                          Case Number   2023-CAB-005582
_____
                                            Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Neil Katsuyama (SBN 1027960)
_____
Name of Plaintiff's Attorney

201 South Lake Avenue, Suite 300
_____
Address
Pasadena, California 91101

(626) 583-8600
_____
Telephone

*Clerk of the Court*

By _____
                              Deputy Clerk

                              September 12, 2023

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.       የአማርኛ  ትርጉም  ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4




DIVISIÓN CIVIL
Sección de Acciones Civiles
Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono

Demandante

contra

ACB Ideas. LLC, 1775 Tysons Blvd. 5th Floor, McLean, VA 22102
Demandado

Número de Caso

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, ya sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Neil Katsuyama (SBN 1027960)
_____
Nombre del abogado del Demandante

201 South Lake Avenue, Suite 300
_____
Dirección
Pasadena, California 91101

(626) 583-8600
_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____

Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH
### INFORMATION SHEET

| | |
|---|---|
| Jennifer Johnson, 1625 Q Street NW, Unit 203, Washington, D.C. 20009 | Case Number: 2023-CAB-005582 |
| Plaintiff(s) | |
| vs | Date: September 11, 2023 |
| ACB Ideas, LLC, 1775 Tysons Blvd, 5th Floor, McLean, VA 22102 | ☐ One of the defendants is being sued in their official capacity. |
| Defendant(s) | |

**Name:** *(Please Print)*
Neil Katsuyama (neil.katsuyama@aalrr.com)

**Relationship to Lawsuit**
☑ Attorney for Plaintiff
☐ Self (Pro Se)
☐ Other: _____

**Firm Name:**

**Telephone No.:** (626) 583-8600     **DC Bar No.:** 1027960

**TYPE OF CASE:** ☐ Non-Jury   ☐ 6 Person Jury   ☑ 12 Person Jury
Demand: $ 1,000,000.00   Other: _____

**PENDING CASE(S) RELATED TO THE ACTION BEING FILED**

Case No.: _____   Judge: _____   Calendar #: _____

Case No.: _____   Judge: _____   Calendar #: _____

---

**NATURE OF SUIT:**   *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☑ Wrongful Termination

---

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement
☐ Ejectment
☐ Eminent Domain
☐ Interpleader
☐ Other
☐ Quiet Title
☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

---

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

---

CV-496/February 2023

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil

- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☐ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

- ☐ **TRAFFIC ADJUDICATION APPEAL**
- ☐ **REQUEST FOR FOREIGN JUDGMENT**

_____
Filer/Attorney's Signature

September 11, 2023
_____
Date

CV-496/February 2023



**Superior Court of the District of Columbia**
**Civil - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**(202) 879-1133 | www.dccourts.gov**

**Case Number:** 2023-CAB-005582

**Case Caption:** Jennifer Johnson v. ACB Ideas, LLC

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 12/15/2023 | 9:30 AM | Remote Courtroom 318 |
| Please see attached instructions for remote participation. | | |
| Your case is assigned to Associate Judge Milton C Lee. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1)  This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2)  Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3)  Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4)  At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5)  If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6)  Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

Persons with Disabilities:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

Interpreting and Translation Services:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

## Servicios de interpretación y traducción:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

## የቋልና የጽሑፍ ትርጓሜ አገልግሎቶች:

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቋል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩዉን የጽሕ ቢሮ (ክለርክ'ስ አፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  📞 Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

# District of Columbia Courts

## Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:



| | | |
|---|---|---|
| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**. If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call: **202-879-1900**
Email: DCCourtsRemoteSites@dcsc.gov

Case 1:23-cv-02944-RCL    Document 1-1    Filed 10/03/23    Page 59 of 59

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de lunes a viernes, de 8:30 am a 4:00 pm.

**Los centros de acceso remoto son:**



| | |
|---|---|
| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

# EXHIBIT B

**From:** Erik L. Wilson <Erik.Wilson@aalrr.com>
**Sent:** Tuesday, September 12, 2023 1:29 PM
**To:** Golimowski, Jeff <Jeff.Golimowski@wbd-us.com>
**Cc:** LeBon, Cherylyn Harley <Cherylyn.LeBon@wbd-us.com>; Neil M. Katsuyama <Neil.Katsuyama@aalrr.com>
**Subject:** RE: ACB Ideas Service [AALRR-Cerritos.018477.00008]

External (erik.wilson@aalrr.com)

Report This Email  FAQ

Counsel,

Attached is the complaint against ACB Ideas.  Please acknowledge service.

Email service of all documents is also acceptable for our side.

Please direct all correspondence in this matter to me.

1

Thank you,

Erik

Atkinson, Andelson, Loya, Ruud & Romo
201 South Lake Avenue, Suite 300, Pasadena, California 91101
Direct (626) 773-7666 • Main (626) 583-8600 • Fax (626) 583-8610

From: Golimowski, Jeff
**Sent:** Wednesday, August 30, 2023 12:12 PM
**To:** Erik L. Wilson
**Cc:** LeBon, Cherylyn Harley
**Subject:** [EXTERNAL] ACB Ideas Service

[EXTERNAL MESSAGE]

Good Afternoon, Mr. Wilson,

I trust this email finds you well.

Please be advised that Womble Bond Dickinson (US) LLP represents ACB Ideas, LLC. I have been authorized by ACB Ideas to accept service on its behalf. Email service of all documents to me is fine.

Best,
Jeff Golimowski

**Jeff Golimowski**
Partner
Womble Bond Dickinson (US) LLP

**d:** 703-394-2275                              8350 Broad Street
**m:** 785-691-6486                            Suite 1500
**e:** Jeff.Golimowski@wbd-us.com      Tysons, VA 22102


**womblebonddickinson.com**
  

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

# EXHIBIT C

I declare under the penalty of perjury under the laws of the United States of American that the foregoing is true and correct to the best of my knowledge and information.

Executed this 2nd day of October, 2023

_____
Candice Gayl

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

JENNIFER JOHNSON                    )
                                    )
          *Plaintiff,*              )
                                    )
v.                                  )          Case No. _____
                                    )
ACB IDEAS, LLC                      )
                                    )
          *Defendant.*              )

## DECLARATION OF CANDICE GAYL

I, Candice Gayl, having been duly sworn, depose and state as follows:

1.      I am over the age of 18, am competent to testify to the matters set forth in this
Declaration, and have personal knowledge of the matters set forth in this Declaration,

2.      I am a citizen of and domiciled in Virginia.  I have lived in Virginia since 2020.

3.      I am the Chief Executive Officer of ACB, and have held that position since
February of 2022.

4.      Prior to joining ACB, I worked as the Chief of Staff to Arthur Brooks, who is the
Founder and Chief Creative Officer of ACB.

5.      ACB was created as a District of Columbia limited liability company on December
29, 2021.

6.      ACB has two members: myself and Arthur Brooks.

7.      For business reasons, ACB domesticated as a Virginia limited liability company on
December 9, 2022.

8.      ACB's principal place of business is 1775 Tysons Blvd Fl 5, Mc Lean, VA, 22102.

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JENNIFER JOHNSON | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| ACB IDEAS, LLC | ) | |
| | ) | |
| *Defendant.* | ) | |

## DECLARATION OF ARTHUR BROOKS

I, Arthur Brooks, having been duly sworn, depose and state as follows:

1.    I am over the age of 18, am competent to testify to the matters set forth in this Declaration, and have personal knowledge of the matters set forth in this Declaration.

2.    I am a citizen of and domiciled in Massachusetts. I have lived in Massachusetts since 2019.

3.    I am the Founder and Chief Creative Officer of ACB Ideas, LLC ("ACB").

4.    ACB has two members: myself and Candice Gayl.

I declare under the penalty of perjury under the laws of the United States of American that the foregoing is true and correct to the best of my knowledge and information.

Executed this 2nd day of October, 2023

_____
Arthur Brooks

1

CIVIL COVER SHEET

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jennifer Johnson | ACB Ideas, LLC |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 88888 (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Atkinson, Andelson, Loya, Ruud & Romo, Neil Katsuyama 201 South Lake Ave., Suite 300 Pasadena, California 91101 (626) 773-7767 | ATTORNEYS (IF KNOWN) Womble Bond Dickinson (US) LLP 2001 K Street NW, Suite 400 S Washington, DC 20002 202-857-4410 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ◉ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)          OR          ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

Other Statutes
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 462 Naturalization Application

- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act (TCPA)
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| *2255* | *Discrimination* | | | *Review Law* |
|---|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br><br>Detainee | ☐ 442 Civil Rights – Employment<br>**(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability, age,<br>religion, retaliation)**<br><br>*(If pro se, select this deck)* | | ☐ 895 Freedom of Information Act<br>☑ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loan<br>(excluding veterans) |

| ☐ K. *Labor ERISA*<br>**(non-employment)** | ☐ L. *Other Civil Rights*<br>**(non-employment)** | ☐ M. *Contract* | ☐ N. *Three-Judge*<br>*Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical<br>Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☑ 445 Americans w/Disabilities –<br>Employment<br>☐ 446 Americans w/Disabilities –<br>Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>& Enforcement of<br>Judgment<br>☐ 153 Recovery of Overpayment<br>of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge   ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Employment related suit seeking damages and injunctive relief under DC statutes and common law

| **VII. REQUESTED IN<br>COMPLAINT** | ☐ CHECK IF THIS IS A CLASS<br>ACTION UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>X YES ☐   NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S)<br>IF ANY** | (See instruction) | YES ☐   NO ☑ | If yes, please complete related case form |
|---|---|---|---|

| DATE: _____10/3/2023_____ | SIGNATURE OF ATTORNEY OF RECORD _____ |
|---|---|

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT    (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| Jennifer Johnson<br>1625 Q Street NW, Unit 200<br>Washington, D.C. 20009 | Case No.:    2023-CAB-005582 |
| Plaintiff | |
| ACB Ideas, LLC<br>1420 Spring Hill Road, Suite 600<br>McLean, VA 22102 | JURY TRIAL DEMANDED |
| Defendant(s) | |

---

<u>COMPLAINT</u>

Plaintiff Jennifer Johnson brings this action against Defendant ACB Ideas, LLC ("ACB Ideas") for: (1) wage theft and failing to pay taxes and benefits required under the Washington, D.C. Labor Code ("Labor Code"); (2) breach of contract; (3) wrongful constructive discharge; (4) retaliation; and (5) intentional infliction of emotional distress. In support of her claims, Ms. Johnson states as follows:

**I.    INTRODUCTION**

1.    Ms. Johnson is the founder of Red Light Public Relations ("Red Light PR"), and longtime best friend of Candice Gayl, the CEO of ACB Ideas. In 2021, Mrs. Gayl hired Red Light PR to do public relations work for Arthur Brooks—a self-proclaimed happiness expert associated with Oprah Winfrey—and several of his for-profit and non-profit entities. Red Light PR promoted Mr. Brooks and his new book *From Strength to Strength*, which debuted at #1 on the New York Times Bestseller List in part due to Ms. Johnson's strategic thinking and leadership at Red Light PR.

2.      Because of the book's breakout success, ACB Ideas was set to experience rapid growth and expansion. But the company had major financial, operational, and administrative problems that were hindering its ability to grow and expand. Unfortunately, Mrs. Gayl had no experience being a successful CEO and was unequipped to fix these issues. The company needed someone capable to step in and help Mrs. Gayl before it was too late. Mrs. Gayl and Mr. Brooks were so impressed with Ms. Johnson that they wanted her to come "in house" at ACB Ideas to help Mrs. Gayl fix the company.

3.      To entice Ms. Johnson into making ACB Ideas her main focus, Mrs. Gayl offered her a compensation package that included a base salary of at least $210,000 a year, plus bonuses, benefits, and a percentage of the gross revenues from Mr. Brooks' books, speaking engagements, and other endeavors. Mrs. Gayl promised that the revenue sharing proceeds alone would allow her and Ms. Johnson to retire comfortably.

4.      However, due to the state of ACB Idea's financials at the time, Mrs. Gayl said it was unclear how much above $210,000 ACB Ideas could pay, and what the precise revenue sharing percentage would be. ACB Ideas promised to determine the final base pay and revenue sharing amounts as soon as possible. Ms. Johnson agreed to the deal because Mrs. Gayl was her friend; she put her trust in Mrs. Gayl and accepted the offer.

5.      Ms. Johnson was employed as ACB Ideas' Chief of Staff (the second-highest executive in the company) from October to December 2022. During that time, Ms. Johnson 60 or more hours a week to fix the company's financials, operations, and policies. The company's financial and operational performance improved dramatically as a result. And Mr. Brooks and Mrs. Gayl repeatedly praised Ms. Johnson and her work.

2

6.      But Ms. Johnson soon learned that there were deeper legal problems at the company.  As Chief of Staff, Ms. Johnson sat down with and interviewed each employee. Shockingly, Ms. Johnson discovered that multiple employees were improperly classified as independent contractors and that ACB Ideas was knowingly and intentionally misclassifying them in order to save money on overtime, benefits, and taxes.

7.      When Ms. Johnson confronted Mrs. Gayl about it, Mrs. Gayl stated that she and Mr. Brooks had already discussed the issue and decided to keep the employees misclassified because they were afraid of a possible recession.  Keeping the employees misclassified would save money and help the company weather any future financial crisis.  Ms. Johnson also discovered the ACB Ideas targeted their hiring towards vulnerable stay-at-home mothers desperate to re-enter the workforce and willing to accept misclassification as the price of entry.

8.      But it got worse.  Shortly thereafter, Ms. Johnson learned that one of the misclassified employees had been forced to work full time (and overtime) hours for part time pay.  The employee had complained and gotten a raise—but only for her full time hours going forward; she would not be paid for the months of extra hours she had already worked.  When the employee later reiterated that she wanted to be classified as an employee, Mrs. Gayl retaliated against her by slashing her raise by 33%, applying the pay cut retroactively, and withholding the money from the employee's future earnings.

9.      Ms. Johnson confronted Mrs. Gayl about this, too.  It did no good.  Mrs. Gayl continued to retaliate against the employee by attempting to force her to take an even steeper pay cut in exchange for properly classifying her as an employee.  When the employee refused the additional pay cut, she was terminated.

3

10.    Ms. Johnson was distraught by ACB Ideas' actions and disillusioned by Mr. Brooks' and Mrs. Gayl's behavior. Their exploitation of hard working mothers and flagrant violation of their legal rights directly contradicted Mr. Brooks' and ACB Ideas' brands. Neither Mr. Brooks nor Mrs. Gayl practiced what they preached.

11.    Ms. Johnson told Mrs. Gayl that her and Mr. Brooks' actions were illegal and wrong. Days later, ACB Ideas retaliated against Ms. Johnson, too: ACB Ideas fired her company (Red Light PR, which was under a separate contract), slashed Ms. Johnson's base wages by at least 32%, and refused to pay her for any of the hundreds of hours of work she had already performed. Ms. Johnson resigned in protest. To date, she has never been paid a penny for any of the work she performed.

12.    Ms. Johnson was left with no choice to but bring this lawsuit to vindicate her rights.

## II.    JURISDICTION

13.    The Court has jurisdiction over the subject matter of this case pursuant to D.C. Code § 11-921 and D.C. Code § 32-1308.

14.    This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-422 and D.C. Code § 13-423.

## III.    PARTIES

15.    Plaintiff Jennifer Phillips Johnson is an individual residing in the District of Columbia. At all relevant times, Plaintiff resided in the District of Columbia and worked for ACB Ideas as an employee in the District of Columbia.

16.    Defendant ACB Ideas, LLC was a District of Columbia limited liability company that converted to a Virginia limited liability company. At all times relevant to this case, ACB

4

Ideas was a District of Columbia limited liability company that employed Ms. Johnson as its Chief of Staff.

IV.    **FACTS**

    A.    ACB Ideas Recruits Ms. Johnson To Help Fix The Company

    17.    Ms. Johnson is the founder and CEO of Red Light PR, a public relations firm specializing in brand strategy and publicity, product placement, and producing and marketing special events.

    18.    Ms. Johnson founded Red Light PR in 2002 out of a single office in Los Angeles, California.  Through Ms. Johnson's hard work, business acumen, and leadership as CEO, Red Light PR expanded its offices and operations to New York City, Washington, D.C., Miami, and Arizona.   The company has also represented some of the biggest and most prestigious companies, brands, and celebrities in the United States, including Disney, Paul Frank, and Zendaya.

    19.    In June 2021, Red Light PR was engaged by the Abigail Adams Institute ("Abigail Adams"), a non-profit run by Mr. Brooks and Mrs. Gayl, to provide PR services for Abigail Adams and Mr. Brooks.  Mrs. Gayl knew Ms. Johnson because the two had been fast friends for nearly 30 years.  When Mr. Brooks and Mrs. Gayl formed ACB Ideas, Red Light PR's engagement was transferred to that entity.

    20.    The scope of Red Light PR's work was laid out in an independent contractor agreement, which cabined Red Light PR's work to PR services such as social media engagement, event planning and coordination, newsletters, and other media management.  The most important PR work, however, was promoting Mr. Brooks and his upcoming book *From Strength to Strength*.

5

21.    As a result of Red Light PR's outstanding work, *From Strength to Strength* debuted at #1 on the New York Times Bestseller list. Ms. Philips Johnson and Red Light PR were expressly thanked for their invaluable contributions in the book's acknowledgments. Mr. Brooks and ACB Ideas also recommended Ms. Philips Johnson and Red Light PR to other authors to promote their books.

22.    Red Light PR's successful public relations campaign directly resulted in ACB Ideas and Mr. Brooks getting interviews with Oprah Winfrey ("Oprah"), major news organizations, podcasts, and magazines. The campaigns also directly resulted in additional speaking engagements and other business opportunities, including a book co-authored with Oprah named *Build the Life You Want: The Art and Science of Getting Happier*.

23.    Mrs. Gayl and Mr. Brooks were so impressed by Ms. Johnson and her leadership of Red Light PR that Mrs. Gayl began recruiting Ms. Johnson to come "in house" at ACB Ideas to help fix systemic problems that could hamper its expansion as a result of Red Light PR's successful public relations campaigns.

24.    Mrs. Gayl was frank with Ms. Johnson: ACB Ideas had serious operational, staffing, leadership, and financial problems that Mrs. Gayl was not equipped to fix. Mrs. Gayl had no experience being a successful CEO or leading a financially sound business of any size. Mrs. Gayl had only recently been promoted to CEO after a corporate reorganization. Mrs. Gayl had owned her own company in the past, but it failed. Mrs. Gayl also had no experience properly maintaining corporate books, records, and financial accounts. Mrs. Gayl was unequipped to deal with these issues or supervise others in doing so.

25.    ACB Ideas was set to experience explosive growth, but it would falter at the gate if it could not get its operations in order beforehand. The company needed someone capable to

6

step in and drive corrective action before it was too late. Mrs. Gayl pleaded with Ms. Johnson to come on board and help her fix the company.

    **B.**    **ACB Ideas Hires Ms. Johnson As Chief Of Staff For At Least $210,000 A Year**

26.    Mrs. Gayl offered Ms. Johnson the second-highest C-Suite position at the company: Chief of Staff. That was Mrs. Gayl's title until the role of CEO was created. Mrs. Gayl promised Ms. Johnson a generous compensation package, complete with a revenue sharing deal so lucrative that it would allow Ms. Johnson to comfortably retire.

27.    But Ms. Johnson was unwilling to abandon Red Light PR—the company she had built from the ground up—for ACB Ideas. To entice Ms. Johnson into making ACB Ideas her main focus, Mrs. Gayl offered her a generous compensation package that included a base salary of at least $210,000 each year, plus bonuses, benefits, and percentage of revenues from Mr. Brooks' books, speaking engagements, and other endeavors ("Agreed-Upon Wages").

28.    However, due to the state of ACB Idea's financials at the time, Mrs. Gayl said it was unclear how much above $210,000 ACB Ideas could pay, and what the precise revenue sharing percentage would be. ACB Ideas promised to determine the final base pay and revenue sharing amounts as soon as possible—but in no case would her base pay be less than $210,000 a year.

29.    Ms. Johnson was also promised a happiness-centered work environment. ACB Ideas core purpose, and Mr. Brooks' core brand, was spreading happiness. Indeed, Mr. Brooks routinely teaches employers how to create happy work environments filled with happy employees.

7

30.    Based on these representations—and Ms. Johnson's long term friendship to Mrs. Gayl—Ms. Johnson and ACB Ideas then entered into an oral employment agreement that included the following terms:

a.    Ms. Johnson would come "in house" as Chief of Staff—a full time employee of ACB Ideas;

b.    Red Light PR would continue to be ACB Ideas' public relations company under its separate independent contractor agreement;

c.    Ms. Johnson would be paid wages of at least $210,000 each year, plus benefits, bonuses, and revenue sharing;

d.    The amount of base wages over $210,000 would be determined later by agreement of the parties based on the outlook of the Company's budgets and finances;

e.    The amount of bonuses and revenue sharing were also to be determined later.

31.    Upon information and belief, $210,000 a year is more than $100,000 *less* than the median annual wages for a Chief of Staff at a for-profit company in Washington, D.C.  ACB Ideas repeatedly told Ms. Johnson that she was worth more than $210,000 and that ACB Ideas would make every effort to pay her more.  ACB Ideas specifically mentioned that a base wage of $150,000 per year was far too low.

**C.    Ms. Johnson Works 60 Hour Weeks as Chief of Staff With No Pay**

32.    After entering into the oral employment agreement, Ms. Johnson got to work as Chief of Staff and began turning the company around.

33.    Ms. Johnson expected ACB Ideas to have some problems—but she was completely unprepared for what awaited her.  ACB Ideas was in total disarray from a business

8

and legal perspective: it had pervasive financial, budgeting, staffing, operational, and management problems. Multiple employees were also intentionally misclassified as independent contractors in order to save the company money on overtime, benefits, and taxes.

34.     Fixing these problems would require a herculean effort. Ms. Johnson would have to devote herself almost completely to ACB Ideas—so much so that Red Light PR would have to turn down clients and business opportunities due to her absence. She raised these issues to Mrs. Gayl, who repeatedly promised Ms. Johnson that her compensation package and ACB Ideas' future business with Red Light PR would more than make up for it. In reliance on these promises, Ms. Johnson began working up to 60 hour weeks—days, nights, and weekends—to turn ACB Ideas around.

35.     Ms. Johnson spearheaded fixing all aspects of the business: finances, budgets, human resources, staffing, administration, hiring/firing, salaries, and management of employees. Ms. Johnson's results spoke for themselves: ACB Ideas' financial position drastically improved, employee and contractor productivity increased, salaries to unqualified nepotism hires were reduced, and salaries for overworked and underpaid employees were set to be increased. ACB Ideas' and Mr. Brooks' brands were stronger than ever. Both Mrs. Gayl and Mr. Brooks lauded Ms. Johnson's performance and touted her extraordinary results to other companies, authors, and speakers.

36.     But despite her outstanding performance, ACB Ideas never paid Ms. Johnson a dollar of compensation. She was repeatedly promised that payment would be coming. No payment ever came.

37.     But, upon information and belief, ACB Ideas always had the resources to pay Ms. Johnson:

9

a.  *First*, much (if not all) of ACB Ideas' payroll and administrative expenses were paid by Abigail Adams.  Upon information and belief, Abigail Adams was used as a tax shelter to help ACB Ideas avoid paying taxes on a $5 million seed investment provided to Arthur Brooks by a wealthy donor.  Abigail Adams used its "non-profit" status to receive the $5 million tax free, then funnel it to ACB Ideas and Mr. Brooks' other endeavors by paying those companies' expenses, subsidizing Mr. Brooks' speaking fees, and covering other of Mr. Brooks' personal expenses.  Thus, ACB Ideas operated without normal overhead.  It had no excuse for stealing from its employees.

b.  *Second*, Ms. Johnson's work as Chief of Staff had saved the company substantial sums of money.  Thus, the company was <u>more</u> profitable than when Ms. Johnson started.

c.  *Third*, ACB Ideas secretly paid Mrs. Gayl a discretionary bonus of at least $60,000 while Ms. Johnson was employed there.  That was enough to cover Ms. Johnson's base wages during her term of employment.  Discretionary bonuses should only be paid if a company has enough money to cover its payroll obligations.  ACB Ideas either had the money to pay Ms. Johnson and lied about it, or the CEO stole it and put it in her own pocket.

## D.    Ms. Johnson And Other Employees Complain About Labor Code Violations

38.    Because she was Chief of Staff, other employees began to complain to Ms. Johnson that they were misclassified as independent contractors.  They also told Ms. Johnson that their misclassification was well known—multiple people had told Mrs. Gayl she was

10

misclassifying employees, but Mrs. Gayl refused to reclassify them.    Ms. Johnson also believed – based on her extensive experience as CEO of Red Light PR – that these independent contractors were misclassified employees.

39.    Through her conversations with these other employees, Ms. Johnson also learned that ACB Ideas was using predatory hiring practices specifically designed to find employees who would accept being misclassified as independent contractors.  ACB Ideas would advertise job openings in a local "DC Moms" community webpage to find stay-at-home mothers who desperately wanted to return to the workforce, but had few opportunities to do so.  ACB Ideas would then exploit that desperation by hiring them as misclassified independent contractors to save money on benefits and taxes.  Mrs. Gayl and others made them feel lucky to have a job and too afraid to enforce their rights for fear of reprisal.  Screaming, belittling, berating, and other forms of bullying and workplace abuse were commonplace by Mrs. Gayl.  Speaking up was an act of disloyalty.  Mrs. Gayl demanded loyalty to ACB Ideas above all else, even if that meant employees had to sacrifice their Labor Code rights.

40.    Ms. Johnson reported what she learned to Mrs. Gayl and told her that ACB Ideas needed to reclassify multiple independent contractors as employees.  She also recommended that multiple misclassified employees receive pay raises, as they were underpaid compared to the market and to the value they created for the company.

41.    Mrs. Gayl stated that she and Mr. Brooks had already discussed the issue and decided to keep the employees misclassified because they were afraid of a possible recession.  Keeping the employees misclassified would save money and help the company weather any future financial crisis.

11

42.     Ms. Johnson reiterated to Mrs. Gayl that misclassification was illegal and that ACB Ideas did not have the option to delay making them employees.  Mrs. Gayl refused to budge and became angry that Ms. Johnson kept pushing the issue.

43.     Ms. Johnson also complained that she had not yet been paid and that Mrs. Gayl had made no effort to finalize the amount of Ms. Johnson's compensation.  Mrs. Gayl made excuses, but no payments.  Mrs. Gayl again became angry that Ms. Johnson kept pushing the company to spend money to fix its Labor Code violations.

**E.     ACB Ideas Retaliates Against Ms. Johnson And The Other Another Employee For Their Complaints**

44.     Around the first week of December 2022, ACB Ideas suddenly terminated one of the misclassified employees that was complaining about her misclassification.  Ms. Johnson— despite being Chief of Staff—was not consulted prior to the firing.  As the employee later explained (and Ms. Gayl confirmed) to Ms. Johnson:

    a.     The employee had been hired part time, but had been required to work full time hours starting in July 2022 without additional compensation.  The employee felt that ACB Ideas had planned to do this because Mrs. Gayl told her that she was <u>not allowed</u> to track her hours—which would make it more difficult to know and prove that she was working more hours than she was being paid for.

    b.     The employee complained to Mrs. Gayl about the repeated underpayment in August 2022.  Mrs. Gayl agreed to pay the employee a full time salary starting in September 2022.  The employee would not receive any pay for the additional hours she had already worked in July and August.

12

c.  Mrs. Gayl refused to budge.  The employee accepted Mrs. Gayl's offer because she felt she had no choice.

d.  The employee also complained to Mrs. Gayl that she was an employee, not an independent contractor, and wanted to be properly classified as an employee.  The misclassification was costing the employee too much in lost compensation and other employee benefits, including more favorable tax rates.

e.  After receiving these complaints, Mrs. Gayl emailed the employee at the end of November 2022 and retroactively reduced her pay raise by 33%. The employee would still have to work upwards of 50 hours per month with no overtime pay (because she was misclassified as an independent contractor instead of an employee)—but would now do so for significantly less money.

f.  Because the pay cut was retroactive, Mrs. Gayl told the employee she had to pay back ACB Ideas the 33% she was allegedly "overpaid" in September and October.  Mrs. Gayl told the employee that ACB Ideas would deducted those overages from her future wages.  No offset was provided for the employees' unpaid wages from July and August (or other losses caused by the employee being misclassified).

g.  The employee felt that this was illegal and told Mrs. Gayl so.

h.  Mrs. Gayl responded by offering the employee an even worse deal: the employee would be classified as an employee starting in 2023, but only if

13

she took an even more substantial pay cut. The employee refused and Mrs. Gayl immediately terminated her.

45.    Ms. Johnson was shocked and distraught over the employee's firing. The employee was a hard working mother with young children at home. She had just helped launch a New York Times bestseller and was supposed to be receiving a raise—not a salary reduction and termination. Ms. Johnson again confronted Mrs. Gayl, telling her that what ACB Ideas had done was illegal and wrong. Mrs. Gayl did not care.

46.    After the employee was terminated, Ms. Johnson began to fear that she would face a similar fate. Mrs. Gayl appeared to have cut the employee's salary and terminated her for: (1) complaining about misclassification and underpayment; and (2) being forced to subsidize her long-overdue reclassification out of her own wages. Ms. Johnson had been the employee's most vocal advocate.

47.    Ms. Johnson had also been complaining about her own non-payment and the fact that her employment contract had yet to be finalized. If Mrs. Gayl similarly retaliated against Ms. Johnson, it would be devastating. Mrs. Gayl had promised to expand Red Light PR's role and, in reliance on that promise, Ms. Johnson had just reoriented the company to focus on ACB Ideas. Red Light PR turned down new clients, let clients go, and gave its staff raises in anticipation of the additional work they would soon be expected to do for ACB Ideas.

48.    Days later, Ms. Johnson's fears came true. Less than a week after Ms. Johnson complained about the employee's firing, ACB Idea began retaliating against her. Mrs. Gayl: (1) called Ms. Johnson into a meeting to discuss her contract; (2) fired Ms. Johnson's company Red Light PR; and (3) instructed Ms. Johnson to train a replacement company with zero public relations experience.

14

49.    At the meeting, Mrs. Gayl told Ms. Johnson that she would only be paid $150,000 a year going forward as Chief of Staff. That was: (1) 32% less than the minimum base wage they had agreed to; (2) nearly $170,000 less than the median Chief of Staff salary in Washington, D.C.; and (3) the exact same wage Mrs. Gayl had previously stated was unacceptably low. Ms. Johnson was not offered any back pay at all.

50.    When it became clear that Mrs. Gayl's terms were being offered on a take-it-or-leave-it basis, Ms. Johnson rejected the offer and resigned in protest.

51.    Ms. Johnson then demanded the compensation she was owed. ACB Ideas refused to pay her a penny. Ms. Johnson was left with no choice to but bring this lawsuit to vindicate her rights.

## COUNT I: FAILURE TO PAY WAGES WHEN DUE
## (VIOLATION OF D.C. CODE § 32-1302)

52.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

53.    Ms. Johnson was employed as ACB Ideas' Chief of Staff from October 2022 to December 2022. This was a full time "in house" employee position held by Ms. Johnson individually (not by Red Light PR).

54.    ACB Ideas is an "employer" that employed Ms. Johnson as an "employee," as defined by the Minimum Wage Revision Act ("MWRA").

55.    For her employment as Chief of Staff, Ms. Johnson was repeatedly promised regular wages of at least: (a) $210,000 annually; (b) bonuses; (c) employee benefits; and (d) revenue sharing proceeds.

56.    The MWRA requires employers to pay their employees on regular intervals. Non-exempt employees are required to be paid at least twice per month; exempt employees are

15

required to be paid at least once per month. The MWRA also requires employers to designate these pay periods to the employee before the employee begins working.

57.    ACB Ideas never paid Ms. Johnson any wages or compensation. ACB Ideas also never designated any pay periods for Ms. Johnson.

58.    ACB Ideas violated the MWRA by: (1) failing to pay Ms. Johnson her wages at the regular intervals prescribed by the MWRA; and (2) failing to designate Ms. Johnson's pay scale before she began working.

59.    Under D.C. Code § 32-1308, employers who violate this provision are required to pay the affected employee back wages, treble damages on the back wages, statutory penalties, costs, and attorney's fees. Interest is also accrued. Each failure to pay at the regular interval accrues a separate statutory penalty.

60.    Moreover, ACB Ideas' repeated violations were willful under D.C. Code § 32-1307. Each willful violation is a misdemeanor and subjects ACB Ideas (in addition to other damages and penalties) to fines of $5,000 or $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation).

## COUNT II: FAILURE TO PAY WAGES AT RESIGNATION OR DISCHARGE (VIOLATION OF D.C. CODE § 32-1303)

61.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

62.    Under the MWRA, employees who do not have written employment contracts must be paid all outstanding wages within seven days of their resignation, or the next regular payday, whichever is earlier.

63.    Employers who fail to timely pay such final wages must pay the employee (in addition to all outstanding wages and other damages) liquidated damages of: (a) 10% of the

16

outstanding amount per day until paid; or (b) triple the unpaid wages, whichever is smaller. Employers must all pay all costs, attorney's fees, interest, and any other penalties.

64.    Ms. Philips Johnson had an oral employment contract.

65.    Ms. Philips Johnson was constructively terminated (i.e., resigned) from ACB Ideas on or around December 13, 2022.

66.    ACB Ideas did not pay Ms. Johnson any wages after she resigned.

67.    ACB Ideas' repeated violations of the MWRA were willful and intentional, not accidental or negligent. Willful violations are punishable by fines of $5,000 to $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other damages and penalties.

## COUNT III: FAILURE TO PAY WAGES CONCEDED TO BE DUE (VIOLATION OF D.C. CODE § 32-1304)

68.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

69.    If there is a bona fide dispute about whether an employee is owed wages, the MWRA requires employers to give the employee written notice of the disputed amount and pay the employee all wages not subject to a bona fide dispute. Employers must provide this notice and payment to their employees at: (1) each applicable pay period; and (2) discharge/resignation.

70.    The oral employment contract between ACB Ideas and Ms. Johnson established her wages as at least $210,000 in base compensation each year, plus bonuses, benefits, and revenue sharing. ACB Ideas never disputed that Ms. Johnson was entitled to this compensation while she was employed and never tried to renegotiate that compensation until the day Ms. Johnson resigned. There is no bona fide dispute that ACB Ideas owes Ms. Johnson the Agreed-Upon Wages and never paid them.

17

71.    Even after Ms. Johnson resigned, ACB Ideas never provided written notice that it disputed her entitlement to any of the Agreed-Upon Wages. Thus, all of Ms. Johnson's back pay was conceded to be due.

72.    At the very least, when ACB Ideas attempted to cut Ms. Johnson's base wage to $150,000 each year, it conceded that Ms. Johnson was owed <u>at least that much</u> in base wages. Accordingly, there could be no bona fide dispute that ACB Ideas owed and failed to pay those wages.

73.    Employers who fail to timely pay such wages must pay the employee all outstanding wages, triple the unpaid wages, and all costs, attorney's fees, interest, and any other penalties. Each failure to pay or give notice is a separate violation.

74.    ACB Ideas' repeated violations of the MWRA were willful and intentional, not accidental or negligent. Willful violations are punishable by fines of $5,000 to $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other damages and penalties.

## COUNT IV: FAILURE TO PAY MINIMUM WAGE
## (VIOLATION OF D.C. CODE § 32-1003)

75.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

76.    The MWRA requires employers to pay non-exempt employees the minimum wage set forth by D.C. Code § 32-1003(a).

77.    Ms. Johnson's oral employment agreement did not classify her as an exempt employee, nor does Ms. Johnson qualify as an exempt employee under the MWRA.

18

78.    ACB Ideas and Ms. Johnson also never agreed that Ms. Johnson would be an

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ Thus, Ms. Johnson was a non-exempt employee

required to be paid her wages on an hourly basis.

79.    Ms. Johnson was never paid any wages by ACB Ideas.    Thus, ACB Ideas

violated the MWRA by failing to pay Ms. Johnson at least the statutory minimum wage for all

hours worked.

80.    Employers who fail to pay minimum wages must pay the employee all

outstanding wages, triple the unpaid wages, and all costs, attorney's fees, interest, and any other

penalties.  Each failure to pay is a separate violation.

81.    ACB Ideas' repeated violations of the MWRA were willful and intentional, not

accidental or negligent.  Willful violations are punishable by fines of $5,000 to $10,000 ($5,000

for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other

damages and penalties.

## COUNT V: FAILURE TO PAY OVERTIME
## (VIOLATION OF D.C. CODE § 32-1003)

82.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this

Complaint as if fully set forth herein.

83.    The MWRA requires employers to pay non-exempt employees overtime at the

rate of 1.5 times their regular hourly rate for any work week in which the employee works more

than 40 hours.

84.    Ms. Johnson was a non-exempt hourly employee under the MWRA and her oral

employment agreement.

85.    Ms. Johnson routinely worked 60 hours per week for ACB Ideas—as

demonstrated by security and computer systems logs (including parking garage and building

19

phone records, and other contemporaneous business records

86.    Ms. Johnson's agreed-upon base wages were at least $105 per hour.  Thus, Ms. Johnson's overtime rate was at least $158 per hour.

87.    Ms. Johnson was never paid any wages by ACB Ideas.  Thus, ACB Ideas violated the MWRA by failing to pay Ms. Johnson her overtime wages for all hours worked.

88.    Employers who fail to pay overtime wages must pay the employee all outstanding wages, triple the unpaid wages, and all costs, attorney's fees, interest, and any other penalties. Each failure to pay is a separate violation.

89.    ACB Ideas' repeated violations of the MWRA were willful and intentional, not accidental or negligent.  Willful violations are punishable by fines of $5,000 to $10,000 ($5,000 for the first Labor Code violation and $10,000 for each subsequent violation), in addition to other damages and penalties.

## COUNT VI: FAILURE TO PAY UNIVERSAL PAID LEAVE TAXES (VIOLATION OF D.C. CODE § 32-541)

90.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

91.    The Universal Paid Leave Act ("UPLA") requires "covered employers" to make contributions to the Washington, D.C. Universal Paid Leave Fund in order to fund paid leave. These mandatory contributions are calculated as a percentage of wages owed to its "covered employees."

92.    ACB Ideas is a "covered employer" that employed Ms. Johnson as a "covered employee" under the UPLA.

20

UPLA

94.    Employers who fail to make UPLA contributions must pay the employee all damages, triple damages, and all costs, attorney's fees, interest, and any other penalties.

<u>COUNT VII: FAILURE TO PROVIDE PAID SICK LEAVE</u>
**<u>(VIOLATION OF D.C. CODE § 32-531)</u>**

95.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

96.    The SSLA requires employers to provide employees with paid sick leave, which accrues based upon hours worked at a rate that depends on the employer's total number of employees.

97.    ACB Ideas is an "employer" that employed Ms. Johnson as an "employee," as defined by the SSLA.

98.    ACB Ideas never accrued paid sick leave for Ms. Johnson, which was a violation of the SSLA.

99.    Employers who fail to provide sick leave must pay the employee damages, costs, attorney's fees, interest, and other penalties.

**COUNT VIII: BREACH OF CONTRACT**

100.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

101.    ACB Ideas and Ms. Johnson entered into an oral employment agreement in which Ms. Johnson was to be paid the Agreed-Upon Wages.

102.    The oral employment agreement is a valid and enforceable contract between ACB Ideas and Ms. Johnson.  The oral employment agreement contained, and the parties agreed upon,

21

the material terms of the con

faith.

103.    The contract was accepted in October 2022, no later than the date Ms. Johnson began performing work for ACB Ideas and ACB Ideas began accepting Ms. Johnson's work.

104.    No provision of the oral employment agreement, nor any action or inaction by any party, relieved ACB Ideas of its obligations to pay Ms. Johnson the Agreed-Upon Wages.

105.    Ms. Johnson performed all covenants, conditions, and promises required to be performed by her under the oral employment agreement.

106.    ACB Ideas materially breached the oral employment agreement, including by: (1) failing to pay Ms. Johnson any of the Agreed-Upon Wages; and (2) failing to negotiate the remaining compensation terms.

## COUNT IX: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

107.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

108.    Every contract contains an implied covenant of good faith and fair dealing that requires each contracting party to act in good faith and to not deprive the other party the benefits of the bargain.

109.    ACB Ideas' breached the implied covenant of good faith and fair dealing in the oral employment agreement by: (1) failing to pay Ms. Johnson any of the Agreed-Upon Wages, without a good faith basis for doing so; and (2) failing to negotiate the remaining terms in good faith.

## COUNT X: FAILURE TO NEGOTIATE OPEN CONTRACT TERMS IN GOOD FAITH

110.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

22

111.    The oral employment agreement between Ms. Johnson and ACB Ideas required ACB Ideas to negotiate the remaining compensation terms in good faith.

112.    Ms. Johnson attempted to negotiate the finalization of these terms.  ACB Ideas refused to negotiate these terms in good faith.  Good faith required ACB Ideas to offer terms consistent with the Agreed-Upon Wages.  ACB Ideas offered retaliatory wages far below the Agreed-Upon Wages and refused to negotiate compensation consistent with the Agreed-Upon Wages.  ACB Ideas negotiated in bad faith, not good faith.

## COUNT XI: WRONGFUL CONSTRUCTIVE DISCHARGE

113.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

114.    ACB Ideas engaged in repeated and ongoing violations of the D.C. Labor Code, which ACB Ideas expressly and/or implicitly asked Ms. Johnson to accept and enforce against other employees.  Other employees were terminated in retaliation for complaining about these Labor Code violations, which Ms. Johnson also complained about.

115.    Additionally, ACB Ideas failed to pay Ms. Johnson for months, refused to negotiate the final terms of her employment agreement, then breached her employment contract and tried to force her to accept a 32% pay cut with no back pay.  These repeated, ongoing Labor Code violations created intolerable working conditions that no employee would or should accept. Additionally, ACB Ideas made it clear that if Ms. Johnson had not accepted the pay cut, and had not resigned, ACB Ideas would have terminated her.  This further demonstrates the intolerable working conditions that Ms. Johnson was subjected to.

116.    Ms. Johnson resigned because her working conditions were intolerable and unacceptable.  Any reasonable employee would have resigned under the circumstances.

23

## COUNT XII: RETALIATION
### (VIOLATION OF D.C. CODE §§ 32–1010, 1311)

117.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

118.    D.C. Code § 32–1010 makes it illegal for any employer to take any adverse actions (*e.g.*, to discharge, constructively discharge, penalize, threaten, or retaliate in any way) against an employee for reporting the employer's potential Labor Code violations to any person.

119.    Any adverse action taken against the employee within 90 days of such reporting creates an automatic presumption that the adverse action was taken in retaliation for the reporting. This presumption can only be rebutted by clear and convincing evidence that retaliation played no part whatsoever in the adverse action.

120.    Employers who retaliate against employees must pay: (1) civil penalties up to $10,000; (2) liquidated damages of double the civil penalty; (3) lost compensation; (4) front pay (and/or reinstate the employee); and (5) all costs, attorneys' fees, interest, and any other fines and penalties.

121.    Ms. Johnson complained about ACB Ideas' Labor Code violations and, within days, ACB Ideas breached its oral employment agreement with Ms. Johnson and constructively discharged her. ACB Ideas did so in direct retaliation for Ms. Johnson complaining about ACB Ideas' various Labor Code violations.

## COUNT XIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122.    Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

123.    ACB Ideas' actions were extreme, outrageous, and intentional. They were also designed to maximize Ms. Johnson's emotional distress. ACB Ideas deliberately exploited the

24

long-standing friendship between Mrs. Gayl and Ms. Johnson to convince Ms. Johnson to begin working for ACB Ideas under the promise of receiving the Agreed-Upon Wages. ACB Ideas then worked Ms. Johnson like a dog for 60 or more hours a week to fix the company's extensive problems. ACB Ideas induced Ms. Johnson to keep working, despite her not receiving any compensation, by repeatedly promising that she would be paid the Agreed-Upon Wages soon. All of ACB Ideas' promises were inexorably tied to Ms. Johnson's friendship with Mrs. Gayl. Indeed, Ms. Johnson only took the position—and remained in the position despite ACB Ideas' misconduct—because Mrs. Gayl was one of her best friends.

124.    Ms. Johnson relied on Mrs. Gayl's and ACB Ideas' representations to work and continue working. Ms. Johnson's 60 hour a week schedule prevented her from both: (1) gaining new clients for Red Light PR; and (2) keeping existing clients that required her personal attention. At the same time, Ms. Johnson was retooling Red Light PR—at ACB Ideas' request—to focus on ACB Ideas, including giving raises to the Red Light PR staff in anticipation of the imminent ACB Ideas' work. ACB Ideas was aware of all these facts as they occurred.

125.    As time went on, the lack of compensation from ACB Ideas, combined with the decreased revenues and increased expenses at Red Light PR, put great financial and emotional stress on Ms. Johnson. Her entire financial future, and friendship with Mrs. Gayl, was now tied to ACB Ideas and whether it would retaliate against her for trying to correct the company's Labor Code abuses. ACB Ideas knew all this but kept inducing to her work through promises of future payment and work.

126.    Upon information and belief, when ACB Ideas decided to retaliate against Ms. Johnson and punish her for reporting Labor Code violations, ACB Ideas constructed its

25

punishment and retaliation to inflict as much financial and emotional distress as it could on Ms. Johnson.

127.   ACB Ideas knew that having Mrs. Gayl: (1) fire Red Light PR on the eve of taking over its expanded role; and (2) constructively terminating Ms. Johnson would cause Ms. Johnson severe emotional distress.  ACB Ideas knew this because Mrs. Gayl was Ms. Johnson's longtime friend, and the two had discussed these very issues.  Mrs. Gayl and ACB Ideas both wanted to inflict severe emotional and financial damage on Ms. Johnson as part of their retaliation.  That is exactly what they did.

128.   ACB Ideas' retaliation forced Ms. Johnson to resign and begin picking up the pieces of Red Light PR, which now had severely reduced income, a reduced client list, and increased expenses all attributable to ACB Ideas.  Because ACB Ideas refused to pay her, Ms. Johnson also had no compensation to offset these financial hardships.  Worst of all, Ms. Johnson had also been duped and betrayed by one of her best friends.

129.   The result of ACB Ideas' retaliation was severe emotional distress on Ms. Johnson that no reasonable person should have to endure: (1) fear that everything Ms. Johnson had built was about to be destroyed; (2) grief over the betrayal by one of her best friends; and (3) shame, humiliation, and embarrassment about being duped, dumped, and retaliated against by a company run by one of her best friends.  As a result, Ms. Johnson experienced severe depression and anxiety, with physical manifestations.  These symptoms continue to this day.

## COUNT XIV: QUANTUM MERUIT
## (IN THE ALTERNATIVE)

130.   Ms. Johnson hereby repeats and re-alleges each and every paragraph of this Complaint as if fully set forth herein.

26

131.    To the extent no contract between Ms. Johnson and ACB Ideas existed, Ms. Johnson is still entitled to be paid the market value of the work she provided to ACB Ideas as its Chief of Staff.

132.    Ms. Johnson provided valuable services to ACB Ideas as its Chief of Staff. ACB Ideas accepted those services knowing, or being reasonably certain, that Ms. Johnson expected to be compensated. Indeed, Ms. Johnson was not an intern or volunteer at ACB Ideas—she was its second highest executive. After taking the value of Ms. Johnson's services, ACB Ideas then failed to compensate Ms. Johnson for those services.

133.    ACB Ideas cannot accept Ms. Johnson's valuable services under such conditions without compensating her for the market value of those services.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    Compensatory damages (including back pay, front pay, emotional distress damages, and lost revenue sharing proceeds), in amounts to be determined at trial;

B.    Reinstatement of employment at the Agreed-Upon Wages, with participation in all revenue sharing proceeds between termination and reinstatement;

C.    An injunction prohibiting further retaliation against Ms. Johnson;

D.    Treble and other statutory liquidated damages, in amounts to be determined at trial;

E.    Statutory and civil penalties/fines, in amounts to be determined at trial;

F.    Consequential damages, in amounts to be determined at trial;

G.    Punitive damages, in amounts to be determined at trial;

H.    Prejudgment interest, to be determined at trial;

I.    All costs and reasonable attorneys' fees; and

27

J.    Any and all other legal and equitable relief this Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a 12-person trial by jury on all issues triable by a jury in this action.


Dated:  September 11, 2023                    ATKINSON, ANDELSON, LOYA, RUUD & ROMO

                                              By: _____
                                                  Neil Katsuyama (SBN 1027960)
                                                  Erik L. Wilson (pro hac vice pending)
                                                  Neil.Katsuyama@aalrr.com / (626) 773-7767
                                                  Erik.Wilson@aalrr.com / (626) 773-7666
                                                  Atkinson, Andelson, Loya, Ruud & Romo
                                                  201 South Lake Ave., Suite 300
                                                  Pasadena, California 91101
                                                  Attorneys for Plaintiff Jennifer Johnson

28



**Superior Court of the District of Columb...**
**CIVIL DIVISION**

**500 Indiana Avenue, N.W., Suite 5000 Washingt...... .....**
Telephone: (202) 879-1133 Website: www.dccourts.gov

Jennifer Johnson. 1625 Q Street NW, Unit 203, Washington. D.C. 20009

vs.

Case Number _____

ACB Ideas. LLC. 1775 Tysons Blvd. 5th Floor. McLean. VA 22102

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Neil Katsuyama (SBN 1027960)
_____
Name of Plaintiff's Attorney

201 South Lake Avenue, Suite 300
_____
Address
Pasadena. California 91101

(626) 583-8600
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

September 12, 2023

Date _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                              Super. Ct. Civ. R. 4





TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
DIVISIÓN CIVIL

**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**

Jennifer Johnson, 1625 Q Street NW, Unit 203, Washington, D.C. 20009
Demandante

contra

Número de Caso: _____

ACB Ideas, LLC, 1775 Tysons Blvd, 5th Floor, McLean, VA 22102
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

| | |
|---|---|
| Neil Katsuyama (SBN 1027960) | *SECRETARIO DEL TRIBUNAL* |
| Nombre del abogado del Demandante | |
| | |
| 201 South Lake Avenue, Suite 300 | Por: _____ |
| Dirección | Subsecretario |
| Pasadena, California 91101 | |
| | |
| (626) 583-8600 | Fecha _____ |
| Teléfono | |

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828로 전화주십시오         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH
## INFORMATION SHEET

| | |
|---|---|
| Jennifer Johnson, 1525 Q Street NW, Unit 205, Washington, D.C. 20009 | Case Number: _____ |
| **Plaintiff(s)** | |
| vs | Date: September 11, 2023 |
| ACB Ideas, LLC, 1775 Tysons Blvd, 5th Floor, McLean, VA 22102 | ☐ One of the defendants is being sued in their official capacity. |
| **Defendant(s)** | |

| | Relationship to Lawsuit |
|---|---|
| Neil Katsuyama (neil.katsuyama@aalrr.com) | ☑ Attorney for Plaintiff |
| Firm Name: | ☐ Self (Pro Se) |
| | ☐ Other: |
| (626) 583-8600    1027960 | |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☑ 12 Person Jury

Demand: $1,00,000.00    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar #: _____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☑ Wrongful Termination

---

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement

☐ Ejectment
☐ Eminent Domain
☐ Interpleader

☐ Other
☐ Quiet Title
☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

---

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

---

CV-496/February 2023

# Information Sheet Continued

- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment

- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Personal Injury
- ☐ Toxic Mass

- ☐ Name Change

**GENERAL CIVIL**

- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil

- ☐ Product Liability
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**

- ☐ Asbestos

**MORTGAGE FORECLOSURE**

- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**

- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**

- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**

- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

_____
Filer/Attorney's Signature

September 11, 2023
_____
Date



**Superior Court of the District of Columbia**

Civil - Civil Actions Branch

**500 Indiana Ave NW, Room 5000, Washington DC 20001**

(202) 879-1133 | www.dccourts.gov

**Case Number:** 2023-CAB-005582

Case Caption: Jennifer Johnson v ACB Ideas, LLC

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 12/15/2023 | 9:30 AM | Remote Courtroom 318 |

Please see attached instructions for remote participation.

| Your case is assigned to Associate Judge Milton C Lee. |
|---|

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

*Chief Judge Anita M. Josey-Herring*

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities**:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción**:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች**:

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባሉ። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሃፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  📞 Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.
- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."
- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.
- Witnesses: tell the judge if you want a witness to testify at your hearing.
- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!
- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.
- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.
- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).
- Speak slowly and clearly so everyone hears what you are saying.
- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.
- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.
- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.
- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.
- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
## (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.
- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.
- Look at the camera when you speak and avoid moving around on the video.
- Wear what you would normally wear to court.
- Sit in a well-lit room with no bright lights behind you.
- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.



# District of Columbia Courts

## Tips for Using DC ...

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:



| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
|---|---|
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station.**  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call: **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

 

**Tribunales del Distrito de Columbia**



Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de lunes a viernes, de 8:30 am a 4:00 pm.

Los centros de acceso remoto son:



| **Sitio Remoto - 1** | **Sitio Remoto - 4** |
|---|---|
| Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| Sitio Remoto - 2<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | Sitio Remoto - 5<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.** Si necesita adaptaciones especiales, como un intérprete para la audiencia, llame al **202-879-1900** al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| Jennifer Johnson | Case No.: 2023-CAB-005582 |
| Washington, D.C. 20009 | Judge Milton C Lee |
| Plaintiff(s), | JURY TRIAL DEMANDED |
| ACB Ideas, LLC<br>1755 Tysons Blvd, 5th Floor<br>McLean, VA 22102 | |
| Defendant(s) | |

## DECLARATION OF SERVICE

I hereby certify that I served a copy of the Summons, Complaint, Civil Actions Information Sheet, Initial Order, and all related attachments in the above-captioned case upon:

Jeff Golimowski and Cherylyn Harley LeBon
Counsel for Defendant ACB Ideas, LLC
Womble Bond Dickinson (US) LLP
8350 Broad Street
Suite 1500
Tysons, VA 22102
Email: Jeff.Golimowski@wbd-us.com; Cherylyn.LeBon@wbd-us.com

by Electronic Service to Jeff Golimowski and Cherylyn Harley LeBon on Tuesday, September 12, 2023 10:29 AM, by agreement between the parties to accept electronic service, including electronic service of all served documents.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1

I further certify that I am a competent person over eighteen years of age, that I am not a party to the above-captioned matter, and that I have served the above-listed documents as indicated above.

Pursuant to DC Super. Ct. Civil R. 9-I (e)(1), I Declare under penalty of perjury that the foregoing statements are true and correct to the best of my personal knowledge, information, and belief.

Dated: September 13, 2023

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: _____
    Neil Katsuyama (SBN 1027960)
    Erik L. Wilson (pro hac vice pending)
    Neil.Katsuyama@aalrr.com / (626) 773-7767
    Erik.Wilson@aalrr.com / (626) 773-7666
    Atkinson, Andelson, Loya, Ruud & Romo
    201 South Lake Ave., Suite 300
    Pasadena, California 91101
    Attorneys for Plaintiff Jennifer Johnson

2